IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
PACIFIC MARITIME ASSOCIATION           )
555 Market St.                         )
San Francisco, CA 94105                )
                                       )
                    Plaintiff,         )
                                       )
            v.                         )   Case No. 12-cv-01477 BAH
                                       )
NATIONAL LABOR RELATIONS BOARD         )
1099 14th Street, N.W.                 )
Washington, D.C. 20570                 )
                                       )
                    Defendant.         )
_____ )

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Defendant National Labor Relations Board ("Board" or "NLRB"), by its undersigned counsel, respectfully submits this statement in support of its Motion to Transfer Venue to the United States District Court for the District of Oregon, Portland Division, pursuant to 28 U.S.C. § 1404(a).

**PRELIMINARY STATEMENT**

Plaintiff Pacific Maritime Association ("PMA") has filed this Complaint for Declaratory and Injunctive Relief ("Complaint") against the Board notwithstanding that there are closely related actions pending in the U.S. District Court for the District of Oregon involving the same parties, facts, legal issues, and events. Specifically, PMA's Complaint and at least three district court actions before the Honorable District Judge Michael H. Simon pending since June 2012, all arise out of a highly contentious and very public labor dispute over the work of plugging in, unplugging, and monitoring refrigerated shipping containers ("reefer work") at Terminal 6 at the

Port of Portland.[1]  Given that the relief PMA seeks from this Court is central to that Portland dispute and closely connected to factual and legal issues being litigated in those actions, this case belongs in the District of Oregon.

To summarize:  Since at least May 2012, PMA and the International Warehouse and Longshoremen Union ("ILWU") have both contended that their collective bargaining agreement -- the Pacific Coast Longshore Contract Document ("PCLCD") -- requires the operator of Terminal 6 at the Port of Portland, PMA member ICTSI Oregon, Inc. ("ICTSI"), to assign the disputed reefer work to ILWU-represented employees.  On the other side, ICTSI, the Port of Portland ("the Port"), and the International Brotherhood of Electrical Workers Local 48 ("IBEW") contend that the Terminal 6 Lease Agreement between ICTSI and the Port requires that the reefer work be assigned to IBEW-represented employees.  In May 2012, administrative unfair labor practice charges relating to this disputed reefer work were filed with the Board's Seattle and Portland Regional offices.[2]  While they were pending, the Board obtained injunctions on July 3 and July 19, 2012 against the ILWU in the District of Oregon to stop ILWU's alleged unlawful conduct aimed at neutral employers.[3]

Meanwhile, in June 2012, PMA and the ILWU commenced a civil action in the District of Oregon to enforce certain arbitration awards that determined that the reefer work should be

---

[1] There has been significant media coverage of this labor dispute at the Port.  *See, e.g.,* *http://www.oregonlive.com/business/index.ssf/2012/08/us_labor_official_will_enforce.html*.

[2] The Board's Region 19 in Seattle, Washington has authority over its "Subregion" 36, located in Portland, Oregon.

[3] *Hooks v. Int'l Longshore and Warehouse Union*, 3:12-cv-01088-SI (D. Ore.) (court issued injunctions sought by the Board enjoining ILWU Local 8 from engaging in work stoppages and slowdowns, Dkt. Nos. 25, 50).  *See also Ronald K. Hooks v. ILWU*, 3:12-cv-01691-SI (D. Ore.) (filed Sept. 19, 2012) (Board's petition for further preliminary injunction pending).

performed by the ILWU employees. That action (and numerous counterclaims) is currently being briefed to the District Court for the District of Oregon.[4]

Following Board administrative hearings, on August 13, 2012, the Board issued the decision at issue in this action pursuant to its authority under Section 10(k) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(k), granting the disputed work to the IBEW-represented employees, thereby rejecting the ILWU's competing claim for the work. Because PMA and the ILWU are alleged to have continued to act in contravention of the Board's Section 10(k) decision, this dispute is actively progressing through additional administrative unfair labor practice proceedings before the Board's Region 19 and Division of Judges, and district court injunction and contempt litigation before the District Court for the District of Oregon.[5] Notwithstanding the evolving and pending litigation in that district, PMA chose this Court to challenge the Board's actions in issuing the Section 10(k) decision.

As the Board will show below, all of the factors under the venue transfer provision of Section 1404(a), 28 U.S.C. § 1404(a), support the Court's transfer of this case to the District of Oregon because that Court has the most meaningful connection to this controversy: nearly all of the operative events occurred in Portland, Oregon; and there are related district court actions already pending there, each involving the same events and parties, and implicating the Board's Section 10(k) award of the disputed work. PMA will undoubtedly assert that the issues raised in this Complaint are distinct, and that claims of "*ultra vires*" agency action are appropriately

---

[4] *Int'l Longshore and Warehouse Union and Pacific Maritime Assoc. v. ICTSI Oregon, Inc.*, 3:12-cv-01058-SI (D. Ore.).

[5] PMA cannot dispute that these district court cases are related to the instant dispute, as it has been substantively involved in those court proceedings. Yet, notwithstanding that PMA has been an active participant in those proceedings, PMA failed to notify this Court of those related actions on this Court's Civil Cover Sheet Form that accompanied the instant Complaint.

placed in a District of Columbia court. However, the District of Oregon is equally suited to entertain PMA's claims that the Board's Section 10(k) decision is invalid. In the Board's view, the District of Oregon could actually be better equipped to consider this Complaint together with the related actions, given that that Court is already intimately familiar with the underlying dispute and the Board's Section 10(k) decision, and has a strong local interest in continuing to adjudicate this dispute.[6] In addition, transferring the case to the District of Oregon is both practical and necessary as it would conserve judicial resources and avoid subjecting the parties to inconsistent results that could result if PMA obtains the relief it seeks here relating to the Board's Section 10(k) award of the disputed work. For all the foregoing reasons and as explained below, this case should be transferred to the District of Oregon.

## RELEVANT FACTS

A. <u>Background: Origin of the Dispute and the Board's Section 10(k) Proceeding</u>

On May 10, 2012, ICTSI filed an unfair labor practice charge with the Board's Region 19 office in Seattle, Washington against IBEW Local 48, alleging, among other things, that IBEW Local 48 threatened and/or coerced ICTSI with the object of forcing or requiring ICTSI to assign the work of plugging, unplugging, and monitoring of refrigerated containers (located at Terminal 6 in the Port of Portland) to employees represented by IBEW Local 48, rather than to employees represented by ILWU Local 8, in violation of Section 8(b)(4)(D) of the NLRA, 29 U.S.C.

---

[6] To be sure, it is the Board's position that the instant Complaint should not be entertained by either Court, and that it should be dismissed in its entirety because PMA cannot satisfy the requirements under *Leedom v. Kyne*, 358 U.S. 184 (1985), to establish that any district court would have jurisdiction to review the Board's actions or grant the relief PMA seeks here. The Board will soon be filing a timely motion to dismiss.

§ 158(b)(4)(D) (NLRB Case No. 19-CD-080738).[7] In response, the Board's Regional Director issued a notice of hearing pursuant to Section 10(k) of the NLRA, which requires the Board to determine such work "jurisdictional disputes" upon the filing of a charge alleging a violation of Section 8(b)(4)(D).[8]

In May 2012, the administrative Section 10(k) hearing was held over four days before a Board hearing officer in Portland, and in June, the Hearing Officer's Report on the 10(k) hearing, along with the record, was submitted to the Board for decision, with the issues presented as: "(1) whether there exists reasonable cause to believe that IBEW Local 48 violated Section 8(b)(4)(D) of the NLRA by threatening to picket or engage in other economic action at the Employer's work site for the object of forcing or requiring the Employer to assign certain work to its members, thus bringing the matter within the scope of Section 10(k) of the NLRA, and (2) if such dispute exists, and in the event no alternative dispute resolution binds all the parties, the Board must decide to whom the disputed work should be assigned (taking into account such factors as

---

[7] IBEW Local 48's threats were precipitated by several grievances filed by ILWU against ICTSI seeking lost time payments because, ILWU asserted, ICTSI, a PMA member, had violated the PCLCD by assigning the disputed work to the IBEW. The grievances were filed pursuant to provisions of the PCLCD. The arbitration rulings arising out of these ILWU grievances are the subject of PMA's Section 301 action, described below.

[8] Section 10(k), 29 U.S.C. § 160(k), provides:

> Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph 4(D) of section 8(b), the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

Employer preference, efficiency, and area standards.")[9] PMA had filed a motion to intervene in the Section 10(k) hearing, which was denied. PMA's subsequent attempts to request special permission to appeal to the Board, and to move for reconsideration were also denied by the Regional Director and the Board, respectively.

On August 13, 2012, the Board issued a Decision and Determination of Dispute Pursuant to Section 10(k) of the NLRA in *IBEW, Local 48 (ICTSI Oregon, Inc.)*, 358 NLRB No. 102, 2012 WL 3306478 (Aug. 13, 2012) ("Section 10(k) Decision"), determining that the ILWU-represented employees were not entitled to perform the disputed work, and instead awarded the work to members of the IBEW, Local 48.

B. Related Actions Pending In The District Of Oregon

The following cases are pending before District Judge Michael H. Simon in the District of Oregon, Portland Division. Judge Simon has been deeply involved in considering these issues and in assisting the litigants resolve the ongoing dispute at Terminal 6 at the Port of Portland.

1. PMA & ILWU v. ICTSI Oregon: The Section 301 Action

On June 13, 2012, PMA and the ILWU filed a Complaint against ICTSI, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for enforcement of various arbitration awards under the PMA-ILWU collective bargaining agreement, the PCLCD ("the 301 Action") (*ILWU and PMA v. ICTSI*, No. 3:12-cv-01058-SI). PMA's 301 Action seeks, among other things, to compel the assignment of the disputed work to ILWU-represented

---

[9] During this time, in response to further alleged unlawful conduct by the ILWU, ICTSI and the Port of Portland filed unfair labor practice charges against ILWU, alleging that the ILWU engaged in proscribed conduct for the purpose of forcing ICTSI to assign the disputed work to ILWU-represented employees, in violation of Section 8(b)(4)(D), and enmeshed neutral entities in its dispute with IBEW (NLRB Case Nos. 19-CD-82461, 19-CC-82533, 19-CC-82744).

employees.[10]  The Port of Portland and the IBEW were each granted intevenor status in the 301 Action by Judge Simon, and ICTSI and the Port have asserted counterclaims, including, among others, a motion to vacate the arbitration awards which the PMA and ILWU seek to confirm.  In its most recent responsive pleading to the Court (Doc. 78, filed Aug. 23, 2012), ICTSI relies upon the Board's Section 10(k) decision, arguing to the District Court that the Court may not confirm the area arbitration rulings as a matter of law because the Board's contrary Section 10(k) decision trumps those rulings.[11]  Consequently, the impact and validity of the Board's Section 10(k) decision will undoubtedly arise in the District of Oregon.

      2.      <u>The Board's Section 10(l) Injunction Actions and Related Contempt Motion</u>

Initially, while the Board's decision in the 10(k) matter was pending, on June 18, 2012, the Board filed a Petition for a Temporary Restraining Order under Section 10(l) of the NLRA, 29 U.S.C. § 160(l).  *Hooks v. ILWU*, 3:12-cv-01088-SI (D. Ore.).  The Board sought, and, after several hearings before Judge Simon, obtained an order enjoining and restraining the ILWU from

---

[10] PMA also commenced an action in the District of Oregon against ILWU Local 8 on June 19, 2012, seeking a TRO and to confirm certain arbitration awards rendered by the local area arbitrators pursuant to their collective bargaining agreement regarding work stoppages caused by ILWU Local 8 at the Port.  *PMA v ILWU, Local 8*, No. 3:12-cv-01100-SI.  On July 20, Judge Simon denied PMA's motions without prejudice, with leave to renew.  This action appears to still be pending.

In addition, also pending before Judge Simon is a lawsuit filed on August 16, 2012 by the ILWU against the Port of Portland and the Commissioners of the Port.  *ILWU v. Port of Portland et al*, Case No. 3:12-cv-01494-SI (D. Ore.).  The ILWU alleges that a cost-sharing agreement between the Port and ICTSI, whereby the Port is off-setting a portion of ICTSI's operating costs and lost revenues "directly attributable to the labor dispute," violates both the Oregon Constitution and 42 U.S.C. § 1983.

[11] *See* ICTSI's Response to ILWU's Motion to Dismiss Defendant's Counterclaims and Plaintiff PMA's Joinder, Case No. 3:12-cv-01058-SI, Doc. 78 at 35 (the Board's decision "in essence moots the petition filed by PMA and ILWU to confirm the . . . arbitration award . . .because the NLRB's Section 10(k) determination takes precedence and supersedes *any* contrary grievance settlement or arbitration award under a CBA, whether issued before or after the NLRB's decision").  The PMA and ILWU motions to dismiss the counterclaims are scheduled for hearing on November 6, 2012.

engaging in secondary conduct in violation of the NLRA and affirmatively directing the ILWU to take certain ameliorative action, including providing written assurances to the neutral shipping and trucking companies at which ILWU had aimed its unlawful secondary conduct ("Neutrals") that it would not threaten or coerce the Neutrals in violation of the NLRA.  On July 3, 2012, the Court issued a Temporary Restraining Order granting the relief requested ("TRO").  On July 19, 2012, the Court issued a preliminary injunction containing language identical to that of the TRO (the "July 19 Order") and warned the ILWU that it would not hesitate to find the ILWU in contempt should it again fail to provide the required assurances to the Neutrals.[12]  The July 19 Order issued by Judge Simon remains in effect until the Board issues its decision in the pending administrative unfair labor practice proceeding, NLRB Cases 19-CA-82533, *et al.*[13]  On September 19, 2012, the Board filed a Petition for Civil Contempt, based upon alleged conduct of the ILWU in violation of the Court's July 19 Order.

Also on September 19, 2012, the Board filed a Petition for Further Preliminary Injunctive Relief under Section 10(l) of the NLRA.  *Hooks v. ILWU*, 3:12-cv-01691-SI (D. Ore.)  The Board is seeking a second injunction, in part based on the Board's issuance of its Section 10(k) Decision, and in part upon additional unfair labor practice charges filed in August 2012 (NLRB Cases 19-CC-87504, 19-CD-87505), alleging ILWU's post-Section 10(k) decision conduct to be unlawful, including filing and processing of grievances against ICTSI, a neutral employer,

---

[12] Specifically, the ILWU was required to certify that it had provided "written notice" to the Neutrals that ILWU would comply with the Court's July 19 Order.   ILWU failed to do so.

[13] As of the date of this filing, post-hearing briefs are due October 25, and those NLRB cases remain pending decision by Board Administrative Law Judge William L. Schmidt.

8

maintaining the Section 301 action seeking to enforce the arbitration awards in ILWU's favor, and making threats to neutral carriers.[14]

### C. The Instant Complaint In This Court

On September 7, 2012, PMA filed the instant Complaint against the Board in this Court, seeking a declaratory judgment that "the NLRB acted beyond its statutory authority" in issuing the Section 10(k) decision (Complaint at 1), as well as injunctive relief.  The Complaint further alleges that the Board's Section 10(k) decision violates the NLRA because one of the two employee groups "was composed of public-sector employees – employees expressly excluded from coverage under the NLRA."  PMA asserts that it attempted to intervene "in the Section 10(k) proceeding as an interested party" but was unsuccessful (Complaint, paras. 19, 21, 22, 27).  PMA seeks to have this Court, among other things: "1. Declare that Defendant was without authority to issue its Section 10(k) award in *IBEW, Local 48*, 358 NLRB No. 102 (Aug. 13, 2012); 2. Vacate and set aside the decision in *IBEW, Local 48*, 358 NLRB No. 102 (Aug. 13, 2012); 3. Enjoin and restrain Defendant, its agents, employees, successors, and all other persons from enforcing, applying, or implementing (or requiring others to enforce, apply, or implement) the decision in *IBEW, Local 48*, 358 NLRB No. 102 (Aug. 13, 2012)."

## ARGUMENT

### ALL THE FACTORS UNDER SECTION 1404(a) DEMONSTRATE THAT THIS COURT SHOULD TRANSFER THE CASE TO THE DISTRICT OF OREGON

#### A. Legal Standards for Motions to Transfer Venue Pursuant Section 1404(a)

Section 1404(a) provides that:  "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[14] It has been long settled by the Supreme Court that once the Board decides a work assignment dispute pursuant to Section 10(k), its decision takes precedence over a contrary arbitrator's award.  *See Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964).

where it might have been brought . . ." 28 U.S.C. § 1404(a).  In adjudicating a motion to transfer under Section 1404(a), a court must make a "factually analytical, case-by-case determination of convenience and fairness."  *SEC v. Savoy Indus.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  *See also Moore's Federal Practice* - Civil §111.13[1][a] (3rd ed.) (a motion to transfer under Section 1404(a) "lies within the broad discretion of the district court" and "requires the court to make a 'flexible and individualized analysis,' and to 'weigh in the balance a number of case-specific factors' to determine whether the proposed transferee district would be a more convenient forum for the litigation") (citations omitted).  Even where venue is proper, a district court has discretion to order a transfer.  *See In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983).

   A district court will usually grant a motion to transfer where the movant has established that the action could have been brought in the proposed transferee district—here, the District of Oregon, *see Lentz v. Eli Lilly*, 464 F. Supp.2d 35, 36 (D.D.C. 2006), and that the "balance of convenience of the parties and witnesses" and  the "interests of justice" favor transfer. *Thayer/Patricof Educ. Funding LLC v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002).  In exercising its broad discretion, and as part of the balancing analysis, the court must weigh a number of "private and public-interest" factors.  *Barham v. UBS Fin. Svcs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007).  The private interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's preferred choice of forum; (3) where the claim arose; (4) convenience of the parties; (5) convenience of the witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof.  The public interest factors include: (1) the transferee court's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local

interest in deciding local controversies at home. *Id*. *See also FTC v. Cephalon*, 551 F. Supp. 2d 21, 25 (D.D.C. 2008) (citations omitted).

### B. This Court, In Its Discretion, Should Transfer the Case to the District of Oregon

The Court should find that these factors weigh in favor of transfer to the District of Oregon. The first requirement for a transfer is met here – that is, PMA could have brought this action in the District of Oregon. As the claims in the Complaint are asserted by PMA, they would involve questions of federal law, and nearly all of the operative events giving rise to this action arose and are continuing to take place within the District of Oregon.[15] The second requirement is also met here – balancing the private and public interest factors and the interests of justice make it clear that transfer is appropriate, *see SEC v. Ernst & Young*, 775 F.Supp. 411, 414 (D.D.C. 1991). Accordingly, the Court should find that the Board has satisfied its burden to show that the factors favor a transfer.

    1. Private Interest Factors Weigh In Favor of Transfer to the District of Oregon

    a. *Plaintiff's Choice of Forum Should Be Accorded Little Weight*

While a plaintiff's choice of forum is ordinarily afforded deference by courts, it is afforded "substantially less deference" where the plaintiff's choice of forum "has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001); *Barham v. UBS Fin. Svcs.*, 496 F. Supp.. at 178. Indeed, a defendant's burden in a motion to transfer "decreases when the plaintiff's choice of forum has no meaningful nexus to the controversy and the parties." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d at 128. In this case, the facts and

---

[15] Under Section 1391(b)(2), venue is appropriate in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated." 28 U.S.C. § 1391(b)(2). Venue would thus be appropriate in the District of Oregon.

11

claim underlying PMA's Complaint lack a substantial connection, or meaningful ties to, this forum. Accordingly, PMA's choice of venue should not be afforded deference.

Indeed, PMA's choice to file its complaint in the District of Columbia is illogical, given the magnitude and complexity of the closely related litigation pending in the District of Oregon involving the same disputed work and the same parties, and that most of the conduct that gave rise to PMA's claims took place in the Portland area. Notably, the District Court in Portland has already denied PMA's request for a TRO in its 301 Action, and separately granted an injunction against the ILWU (PMA's co-plaintiff in the 301 Action) in the Board's Section 10(l) action. The only connection to the District of Columbia is that the Board is headquartered here, and the Board, in conducting normal Agency business, issued its administrative Section 10(k) decision here. Given this single connection, in comparison to the majority of ties to the Portland area, PMA's choice of forum should be given little deference.

    b. *The Board's Preferred Choice of Forum, the District of Oregon, Is the More Logical, Appropriate Forum*

"Venue statutes serve the purpose of protecting a defendant from the inconvenience of having to defend an action . . . that is . . . remote [. . .] from where the acts underlying the controversy occurred.'" *Modaressi v. Vedadi*, 441 F. Supp.2d 51, 53 (D.D.C. 2006). The Board requests a transfer of venue to the District or Oregon because the acts underlying the dispute occurred in that district, and the various claims arising out of the dispute are already being litigated in that district. It makes judicial and practical sense to have all litigation relating to the award of the same disputed work considered and resolved together, and by the same district judge who already is knowledgeable as to the facts and issues relating to the local controversy at the Port, and who has for months been ruling on various motions, claims, and pleadings filed by the parties to the dispute, including PMA and the Board, balancing the relationships between

them. These interrelated cases in the District of Oregon have progressed significantly in that district such that it would be contrary to a prompt and efficient use of judicial resources to have a different court begin anew with this controversy. Significantly, the Board is concerned that a decision by this Court as to the validity of the Board's 10(k) decision will be in conflict with rulings in the Portland cases, including in the Section 10(l) proceeding filed September 19, 2012, which is dependent in part upon the Board's Section 10(k) decision. In light of these circumstances, the first and second private interest factors — the parties' respective choices of forum —weigh heavily in favor of transfer.

      c. *The Claim Arose in the District of Oregon and Events Giving Rise to the Claim Continue to Occur There*

Courts in this district have held that claims "arise" for purposes of Section 1404(a) where most of the significant events giving rise to the claims occurred. *See, e.g., Davis v. Am. Soc'y of Civil Eng'rs*, 290 F. Supp. 2d 116, 123 (D.D.C. 2003) (concluding that the case did not "arise" in this district where "only one of the many potential events giving rise to this action . . . occurred in the District of Columbia"); *S.E.C. v. Ernst & Young,* 775 F. Supp. at 417. Here, as it has been shown above, nearly all ties are to Portland. Indeed, Plaintiff PMA is the collective bargaining agent for its members on the West Coast and is signatory to the collective bargaining agreement at issue in the parties' dispute, covering longshoremenat the Port of Portland, Oregon (Complaint, paras. 5-9). The disputed reefer work at the Port, the parties, and the Board's administrative proceedings are all concentrated in the District of Oregon. Accordingly, the third private interest factor weighs in favor of transfer.

13

    d. *Other Private Interest Factors Are Neutral or Tip in Favor of Transfer to the District of Oregon.*

The Board further submits that the next two considerations, convenience of the parties and convenience of the witnesses are not relevant here, and thus do not weigh in favor of either party.[16] The final private interest factor—ease of access to the sources of proof is also neutral, or if anything, weighs in favor of transfer. The documentary evidence in this case is in electronic form and available to anyone with authority to access it and an internet connection. Indeed, this Court has acknowledged the fact that the location of documents is "increasingly irrelevant in the age of electronic discovery. *Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010). However, should the need arise to refer to original documents or evidence regarding the Port dispute, the District of Oregon would be more convenient.

    2. <u>Public Interest Factors Weigh Strongly In Favor of District of Oregon</u>

    a. Of the three public interest factors, the first – the local interest in deciding local controversies at home – weighs heavily in favor of transfer. The District of Oregon has a compelling interest in having local disputes and all related issues "resolved in the locale where they arise." *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (stating that, "[t]here is a local interest in having localized controversies decided at home").[17] As the Board has established, the majority of the

---

[16] The parties can file pleadings electronically in either forum. With respect to the convenience of the witnesses, the relevant inquiry is "not whether witnesses are located outside the forum of the plaintiff's choice, but whether they would be unwilling to testify in that forum." *Cephalon*, 551 F. Supp. 2d at 28. The Board submits that this case involves only a legal issue and would not require the testimony of witnesses.

[17] This policy rationale would apply equally to a case, not present here but likely claimed to be so by PMA, involving judicial review of an administrative decision which will be limited to the administrative record. *Trout Unlimited v. Dep't of Agric.*, 944 F.Supp. at 19.

operative events occurred in the District of Oregon.  The disputed work, the two unions each claiming the work, the administrative investigation of unfair labor practice charges, the alleged unlawful conduct, the pending 10(l) court injunctive proceedings, and the Section 10(k) hearing all occurred in that district.  The only tie to D.C. is that the actual administrative Board decision awarding the work was made here.  Based on these facts, this Court should find that transfer is supported by a profound local interest in having this matter resolved in the District of Oregon.

      b.  The relative congestion of the transferee and transferor courts should not be a concern here, and this factor should be given little, if any weight.  While "congestion alone is not sufficient reason to transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered" by district courts in the motion to transfer analysis.  *See Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974).  The only point the Board can add here is that the District of Oregon has already demonstrated an ability for prompt scheduling and conduct of its hearings, and as necessary, has ordered injunctions to control alleged unlawful conduct occurring at the Port.  Given its familiarity with the issues, that Court would likely be poised to make prompt rulings to resolve this dispute without unnecessary delay.  Similarly, the final factor—the courts' familiarity with the governing laws—has little bearing here.  This action involves a claim of improper agency action, grounded in federal law.  Despite what PMA may likely assert, the District Court in Oregon does not have any less familiarity with the asserted *Leedom v. Kyne* basis for jurisdiction than this Court. [18]  The District of Oregon would be just as

---

[18] PMA claims the Court has jurisdiction based on *Leedom v. Kyne*, 358 U.S. 184 (1958), a Supreme Court-recognized narrow exception to the general rule prohibiting district court review of Board proceedings.  Under the *Leedom* exception, jurisdiction can exist if it can be shown that two independent factors are present.  First, the order must be "made in excess of [the Board's] delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188.  Second, the party invoking *Leedom* must show that there must be no alternative opportunity for review of the

competent to entertain PMA's allegations and its invocation of the *Leedom v. Kyne* exception to attempt to obtain review of the Board's 10(k) decision as this Court would be.

More importantly, however, while either District Court can ably consider the instant Complaint, the Board's argument is that the Complaint should ultimately be dismissed because neither District Court has jurisdiction to entertain or grant the relief PMA requests.

3. <u>The Court Should Transfer This Case to the District of Oregon "In the Interests of Justice"</u>

The final factor of Section 1404(a), "in the interests of justice," includes such concerns as the existence of related cases in the original district court, trying related litigation together, and the likelihood of conflicting orders or inconsistent judgments. *Heller Fin.*, 883 F.2d 1286, 1293 ((7th Cir. 1976); *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 739 (1st Cir. 1977). Moreover, the risk of exposing litigants to potential conflicting judgments "is exactly the sort of inconsistent result that transfer can ameliorate." *Cephalon,* 551 F. Supp. 2d at 29; *see also Coady v. Ashcraft & Gerel,* 223 F.3d 1, 11 (1st Cir. 2000) (transferring arbitration to forum with related proceedings to facilitate Section 1404(a)'s goal of "preventing duplication of effort and incompatible rulings").

The issues raised in PMA's Complaint are not only related to the district court cases pending in the District of Oregon over which District Judge Simon has presided for the past four months, they are central to it.  While the issue of the impact and precedence of the 10(k) decision has already been raised by the defendant in the 301 Action, and may be raised in the Section 10(l) case, PMA has similarly put the validity of the Board's Section 10(k) decision squarely at issue before this Court.  Either Court's consideration of the claims in the instant Complaint, as

---

Board's action. *Id.* at 190. As the Board will show in a separately filed motion to dismiss, PMA cannot satisfy either of these requirements.

requested by PMA, will entail a review of the Board's decision and underlying facts against the backdrop of the related actions, a task best left for the district judge who is already adjudicating this dispute and has been presiding over the parties' litigation for several months.

Moreover, as noted, PMA seeks to have this Court vacate and set aside the Board's Section 10(k) decision and enjoin the Board or its agents from enforcing it (Complaint, paras. 2, 3). A decision in its favor will necessarily support its 301 Action to obtain enforcement of the arbitration rulings in its favor, because an order from this Court invalidating the Board's decision would support PMA's burden to overcome the well-settled hurdle of *Carey v. Westinghouse*, 375 U.S. 261, 272 (1964), which provides that Section 10(k) decisions of the NLRB take precedence over contrary arbitration awards.[19] Yet, since the District of Oregon already is posed to address this issue, in the interests of justice and fairness, that Court should decide the impact and validity of the Section 10(k) award of the disputed work in the context of the other related issues.

Transfer is also warranted because of the substantial savings in judicial resources that will result from the District of Oregon's familiarity with the underlying dispute and related cases. Courts have recognized the propriety of transfer when another forum is familiar with the history underlying a lawsuit and has a significant and continuous interest in the outcome of the litigation. *See, e.g., In re Genesisintermedia, Inc. Secs. Litig.,* No. CV 01-09024 SVW, 2003 WL 25667662, at *4 (C.D. Cal. June 12, 2003)(transferring to court "more familiar with the underlying facts of the lawsuit" as a result of presiding over related litigation).

In sum, after weighing all the private and public interest factors for and against transfer, this Court should conclude that the Board has established that any presumption in favor of this

---

[19] *Cf. Amer. Postal Workers Union v. U.S. Postal Service*, 2010 WL 2131636 (D.D.C. May 24, 2010) (concluding that the Board's previous bargaining unit ruling was in "explicit conflict" with the arbitrator's finding and thus the arbitrator's award was unenforceable).

17

forum is substantially outweighed by the greater interests of fairness and justice that would be served by transferring this case to the District of Oregon.

## CONCLUSION

For all the foregoing reasons, the Board respectfully requests that its Motion to Transfer Venue be granted.

Respectfully submitted,

s/ Eric G. Moskowitz
ERIC G. MOSKOWITZ
Assistant General Counsel
 for Special Litigation
National Labor Relations Board
1099 14th Street, N.W.
Washington, D.C. 20570
Phone: (202) 273-2930
Fax: (202) 273-1799
E-mail: Eric.Moskowitz@nlrb.gov
D.C. Bar No. 184614

NANCY E. KESSLER PLATT
Supervisory Attorney
Special Litigation Branch
Phone (202) 273-2937
E-mail: Nancy.Platt@nlrb.gov
D.C. Bar No. 425995

DENISE F. MEINERS
Attorney
Special Litigation Branch
Phone: (202) 273-2935
E-mail: Denise.Meiners@nlrb.gov
D.C. Bar No. 433041

KEVIN P. FLANAGAN
Attorney
Special Litigation Branch
Phone: (202) 273-2938
E-mail: Kevin.Flanagan@nlrb.gov

Dated: October 5, 2012            Maryland Bar Member