## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| PACIFIC MARITIME ASSOCIATION | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 1:12-cv-01477-BAH |
| Plaintiff, | ) | Judge Beryl A. Howell |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO TRANSFER VENUE

MORGAN, LEWIS & BOCKIUS LLP
Howard M. Radzely (D.C. Bar #437957)
Charles I. Cohen (D.C. Bar #284893)
David R. Broderdorf (D.C. Bar #984847)
1111 Pennsylvania Avenue, NW
Washington, D.C.  20004
(202) 739-5996

Counsel for PACIFIC MARITIME
ASSOCIATION

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................1

II.  ARGUMENT ........................................................................................2

   A.   The Standard For Motions To Transfer Venue Under 28 U.S.C ........................2

   B.   The Board Has Failed To Meet Its Burden Of Demonstrating That The
        Instant Case Could Have Been Brought In The District Of Oregon ....................3

        1.   Defendant Cannot Simultaneously Move To Transfer And
             Challenge The Jurisdiction Of Transferee Court........................................4

        2.   Venue Is Not Appropriate In The District of Oregon...............................7

   C.   Even Assuming Arguendo The Board Had Satisfied The "Threshold"
        Requirements, This Court Should Not Transfer The Case To The District
        of Oregon ................................................................................................9

        1.   The Private Factors Strongly  Favor Keeping The Case In The
             District of Columbia, The Locus Of The Challenged Agency
             Action ......................................................................................10

             a.   PMA's Choice of Forum Should Be Afforded Substantial
                  Weight .............................................................................10

             b.   Defendant's Choice of Forum, Away From Its Home
                  Jurisdiction, Should Not Be Granted Any Weight ......................12

             c.   PMA's Narrow Claim Arises Solely From An
                  Administrative Decision Made In The District Of Columbia ......13

        2.   The Public Factors Also Weigh Strongly In Favor Of This Court
             Retaining This Action................................................................16

             a.   PMA's Case Has Regional And National Implications, Far
                  Beyond The Boundaries Of Oregon ...........................................16

             b.   The Oregon Court Is Far More Congested Than The
                  District Of Columbia Court ......................................................18

             c.   Familiarity With the Governing Law Does Not Favor
                  Transfer..............................................................................19

        3.   Any Generalized "Interest of Justice" Factor Actually Favors This
             Court's Jurisdiction And Resolution Of The Action ..............................20

III. Conclusion ...........................................................................................24

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE[1]

**I.    INTRODUCTION**

This case concerns a narrow question of the authority of the Defendant National Labor Relations Board ("NLRB" or "Board") to issue a decision where a statutory prerequisite for the Board's jurisdiction is lacking.  The challenged decision was issued by three Members of the NLRB who are residents of D.C. (in their official capacities) and was signed and dated "Washington, D.C. August 13, 2012."  *Int'l Bhd. of Elec.Workers, Local 48*, 358 NLRB No. 102, slip op. at 5 (Aug. 13, 2012) (the "August 13 Decision").  Thus, contrary to the implications from the Board's brief in support of its Motion to Transfer, the instant case concerns action taken wholly within the District of Columbia, involves a question of law with nationwide implications, and does not involve any disputed factual or legal issues that were pending before Judge Simon when this case was filed.[2]

Reading the Board's Motion to Transfer, one could easily miss the fact that the instant case presents a narrow question of the Board's authority to issue a decision where a clear statutory prerequisite is not met.  One also could easily miss the fact that the sole activity challenged by PMA is a decision issued by three Members of the NLRB sitting in D.C.  The Board's Motion does not cite to a single case, and PMA is not aware of such a case, transferring a case out of D.C. where D.C.-based officials had substantial involvement with the challenged decision, let alone a case such as this where the decision subject to challenge was made completely in D.C. by D.C.-based officials.  The Board provides no reason for this Court to become the first court to grant a discretionary transfer motion in this context.

---

[1] Pursuant to Local Rule 7(f), PMA requests an oral hearing on Defendant's motion to transfer.
[2] The PMA has filed contemporaneously herewith a motion for summary judgment which fully explains why the NLRB, sitting in Washington D.C., was without authority to issue the August 13 Decision and why this Court has jurisdiction to decide this matter.  Dkt. Nos. 14 and 14-1.  In the interests of judicial economy, PMA will not repeat the arguments made therein.

As will be discussed in detail below, the Board's Motion is fatally flawed for at least two independent reasons and thus should be denied.  *First*, the Board fails to prove that PMA's Complaint "could have been brought" in the District of Oregon.  The Defendant repeatedly asserts (incorrectly) that this Court, as well as the District of Oregon, has no subject matter jurisdiction over PMA's Complaint.  Resolution of the subject matter jurisdiction question, which is at the heart of PMA's narrow Complaint, therefore moots the Defendant's Motion because this Court will have to resolve the merits of this case to determine if a Motion to Transfer under Section 1404(a) could properly lie.  Additionally, the federal courts' venue rules also confirm that the District of Oregon would not be a proper venue for PMA's Complaint.

*Second*, it is plain under the Section 1404(a) public and private factors that this action should remain in the District of Columbia and that Defendant has failed to meet its "heavy burden" of demonstrating that the factors tilt "strongly in favor of the Defendant" such that this Court should exercise its discretion to transfer this case to Oregon.  Accordingly, the Defendant's Motion to Transfer should be denied.

## II.    ARGUMENT

### A.    The Standard For Motions To Transfer Venue Under 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought*."  28 U.S.C. 1404(a) (emphasis added).  "Under [Section 1404(a)], the moving party bears the burden of establishing that transfer is proper."  *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 176 (D.D.C. 2009).

Analysis of a motion to transfer under Section 1404(a) has two discrete parts.  First, as the Board agrees, the movant must establish "that the action could have been brought in the proposed transferee district."  Def. Mem. at 10 (Dkt. No. 12-1); *see also, e.g., Wyandotte Nation*

2

*v. Salazar*, 825 F. Supp. 2d 261, 264-65 (D.D.C. 2011) ("As a threshold issue, transfer of venue pursuant to Section 1404(a) is only permissible if the receiving district is one where the case could have been brought in the first instance." (citation omitted)).  As discussed below in Section II.B, this "threshold" inquiry requires the movant to establish:  (1) subject matter jurisdiction of the transferee court; (2) that venue is proper in the transferee district court; (3) and that the transferee court has personal jurisdiction over the defendant.

If a movant satisfies this threshold burden, the Court then considers a series of public and private interest factors in determining whether to exercise its discretion to transfer a particular case to another court where it could have been brought.  *See infra* Section II.C.  As this Court has explained, "[c]ourts have imposed a heavy burden on those who seek transfer and a court will *not* order transfer unless the balance *is strongly in favor of the defendant*."  *Wyandotte Nation*, 825 F. Supp. 2d at 264-65 (emphases added; citation omitted).

## B.    The Board Has Failed To Meet Its Burden Of Demonstrating That The Instant Case Could Have Been Brought In The District Of Oregon

In order to establish that this case could have been brought in the proposed transferee district (here the District of Oregon), at the time "this [] complaint was filed, the defendants must have been amenable to personal jurisdiction in [the District of Oregon], subject matter jurisdiction must have existed there, and venue must have been appropriate."  *AT&T Co. v. Milgo Elec. Corp.*, 428 F. Supp. 50, 52 (S.D.N.Y. 1977) (citation omitted); *see also, e.g.*, *Cormier v. Fisher*, 404 F. Supp. 2d 357, 365 (D. Me. 2005) ("The statute states that a Court may transfer the case to any district in which it could have been brought.  Case law elaborates that the 'district court to which transfer is proposed must have jurisdiction of the subject matter, of the parties, and be one in which venue would have been proper.'" (*quoting Roberts Bros., Inc. v. Kurtz Bros.*, 231 F. Supp. 163, 165-66 (D.N.J. 1964)); *Centaur Ins. Co. v. Mission Ins. Grp.,*

*Inc.*, 620 F. Supp. 1492, 1494 (N.D. Ill. 1985) ("[T]he proposed transferee district is proper only if the Court has jurisdiction over the subject matter of this case and the defendants are amenable to service of process issued by the transferee court."); *Thee v. Marvin Glass & Assocs.*, 412 F. Supp. 1116, 1119 (E.D.N.Y. 1976) ("The foregoing phrase [district in which the instant suit 'could have been brought'] has generally been construed to require that the transferee district court possess subject matter jurisdiction over the case, that the defendant be amenable to the personal jurisdiction of the transferee district court, and that proper venue exist in the transferee district court."); 1A Moore's Federal Practice § 781 (L. Ed. 2012) ("A transferee court must have jurisdiction over the subject matter of the action, and the case will not be transferred if it would be dismissed by the transferee court for want of subject-matter jurisdiction.").

There is no dispute that Defendant, when the present Complaint was filed, would have been amenable to personal jurisdiction in the District of Oregon.  Despite meeting this element, the Board has failed to meet its burden of demonstrating that the District of Oregon:  (i) possesses subject matter jurisdiction over the case and (ii) is a proper venue.  Because both elements are not met, the Board cannot prove that PMA's Complaint "could have been brought" in the District of Oregon, and the Board's motion to transfer must be rejected.

1.    Defendant Cannot Simultaneously Move To Transfer And Challenge The Jurisdiction Of Transferee Court

As noted in the Board's Memorandum (at 4, n.6), the Board vigorously contests the subject matter jurisdiction of <u>any</u> federal district court:

> To be sure, it is the Board's position that the instant Complaint should not be entertained by either Court, and that it should be dismissed in its entirely because PMA cannot satisfy the requirements under *Leedom v. Kyne*, 358 U.S. 184 (1985), to establish that any district court would have jurisdiction to review the Board's actions or grant the relief PMA seeks here. The Board will soon be filing a timely motion to dismiss.

Def. Mem. at 4, n.6.  Indeed, while on the one hand the Board notes its belief that *no* court has subject matter jurisdiction, it also argues, on the other hand – without analysis – that "[t]he first requirement for a transfer is met here – that is, PMA *could have brought this action in the District of Oregon*" (Def. Mem. at 11 (emphasis added)).

PMA, of course, vigorously disagrees with the Board's contention that no district court has subject matter jurisdiction.  *See* Dkt. No. 14-1.  The important point, however, is that because the Board challenges the subject matter jurisdiction of *any* district court, and because the question of subject matter jurisdiction goes to the heart of the specific merits question raised by PMA's lawsuit, the very merits of this dispute will have to be resolved <u>before</u> (or in the process of) determining whether PMA could have brought this case in the District of Oregon.  If the Board is correct, and the District Court of Oregon does not have subject matter jurisdiction, PMA could not have brought this action in the District of Oregon.  Transfer would be improper under the plain meaning of Section 1404(a).[3]  Of course, if this Court decides, as PMA urges, that the District of Oregon (like this Court) does have subject matter jurisdiction, a transfer would be unnecessary because that determination would resolve PMA's sole claim in this case.  Summary judgment in favor of PMA would be appropriate at that point.

It also may be true that the Court must resolve *its own* subject matter jurisdiction before it could transfer this case to the District of Oregon:  "There is clear authority that a district court's power to transfer under section 1404 depends on whether it has subject matter jurisdiction, personal jurisdiction over the parties, and is a proper venue."  *Morris v. Mid-Century Ins. Co.*, No. 12-578-SEB-DML, 2012 WL 3683540, at *2 (S.D. Ind. Aug. 24, 2012) (citations omitted); *Klett v. Pim*, 965 F.2d 587, 591 n.7 (8th Cir. 1992) ("[A] court without subject matter jurisdiction

---

[3] If there is no subject matter matter jurisdiction, this case would instead be resolved on the Board's expected Motion to Dismiss.

cannot transfer a case to another [federal district] court."); *CIBC World Mkts., Inc. v. Deutsche Bank Secs., Inc.*, 309 F. Supp. 2d 637, 643 (D.N.J. 2004) ("A court must itself have subject matter jurisdiction over an action before it may transfer that action under Sec. 1404(a).") (citation omitted).

Although decisions from courts in this district have held that the transferor court does not have to have subject matter jurisdiction before transferring a case to another court under section 1404(a), the analysis in these cases is at best questionable, and at worst incorrect. *See, e.g.*, *Aftab v. Gonzelez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) ("Although the defendants have moved to dismiss for lack of subject matter jurisdiction, the motion to transfer venue under Sec. 1404 may be addressed first."); *Kazenercom TOO v. Turan Petroleum, Inc.*, 590 F. Supp. 2d 153, 156 n.5 (D.D.C. 2008) (same). These decisions rely on the Supreme Court's decision in *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 432 (2007), a case which concerned the doctrine of *forum non conveniens*. *Id.* at 425 ("This case concerns the doctrine of *forum non conveniens*, under which a federal district court may *dismiss* an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." (emphasis added)). Under the doctrine of *forum non conveniens*, "[a] federal court has discretion to dismiss a case . . . *when an alternative forum has jurisdiction to hear [the] case* . . . ." *Id.* at 429 (internal quotation marks and citations omitted; alteration in original; emphasis added). In *Sinochem*, the Supreme Court held that "a district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432.

*Sinochem* does not apply to discretionary motions to transfer under 1404(a) for at least three independent reasons.  First, in *Sinochem*, the Supreme Court held that it was illogical for a United States court to have to decide whether there is jurisdiction in the United States if that issue would become a moot point when the case is dismissed in favor of an alternative foreign forum that did have jurisdiction.  *Id.* at 434.  That logic does not apply when the issue is whether to transfer the case to another United States court; when a case is transferred the subject matter jurisdiction question does not go away.  Second, before dismissing an action under *forum non conveniens*, the court must determine if there *is* an alternative forum.  *Id.* at 432-33.  Third, *Sinochem* addressed a *forum non conveniens* dismissal under common law, it did not address a transfer under Section 1404(a) and the specific statutory requirements.  *Id.* at 431.  *Sinochem*, therefore, does not address the requirement under Section 1404(a) that a case may only be transferred to a district in which it "could have been brought."  In other words, *Sinochem* (as well as *Aftab* and *Kazenercom*) simply do not address the fact that the transferee court must have jurisdiction over the subject matter of the action before granting a discretionary transfer motion.

At its core, because the Board's challenge to the transferee court's subject matter jurisdiction must be resolved to determine whether PMA could have brought this case in the District of Oregon -- a prerequisite for transfer under Section 1404(a) -- the underlying merits of this case must be resolved before Defendant's transfer motion could be granted.  This moots the need for Defendant's motion in the first place.  The Board's Motion to Transfer venue, therefore, should be denied on this ground.

### 2. Venue Is Not Appropriate In The District of Oregon

The Board likewise cannot show that venue would have been appropriate in the District of Oregon, another required element to prove that PMA's Complaint "could have been brought" in the transferee district.  Under 28 U.S.C. § 1391(e)(1), venue is appropriate where:  (i) the

Defendant resides, (ii) a substantial part of the events giving rise to this claim occurred, or (ii) the Plaintiff resides.  The Board bases its assertion that venue is proper in the District of Oregon on the second of these three bases.  Def. Mem. at 11 n.15.[4]

None of the three prongs of Section 1391(e)(1) are met here.  As an initial matter, the Board has not argued – and cannot argue – that it resides in the District of Oregon.  Def. Mem. at 11.  As the Board concedes, it does not even have a regional office in Oregon:  "The Board's Region 19 in Seattle, Washington has authority over its 'Subregion' 36, located in Portland, Oregon."  *Id.* at 2, n.2.  There is no basis to conclude that the Board's regional office in Washington State exercising authority over a "subregion" in Oregon is a sufficient presence for the Board to "reside" in Oregon.  Moreover, "[t]here is nothing in [Section 1391] or its legislative history which suggests that Congress also sought to allow a federal agency to be sued [] wherever it may maintain an office."  *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978).

Similarly, the Board has not argued – and cannot argue – that PMA, which is headquartered and maintains its principal place of business in San Francisco, is a resident of the District of Oregon.  Under Section 1391(c)(2) an entity is deemed to reside, "if a plaintiff, only in the judicial district in which it maintains its principal place of business."  Although PMA has a satellite office in Oregon and participates in some activities there, its "principal place of business" is clearly in California where its headquarters are located and the vast majority of its

---

[4] The Board cites Section 1391(b)(2), rather than (e)(1)(B), as the basis for venue, but both provisions apply the same standard, one generally for federal cases and one specifically for federal agency cases.

activities occur.[5]  Section 1391(e)(1)(C)'s venue language cannot be satisfied based on PMA's residence in San Francisco, California.

Finally, the Board has failed to establish that a substantial part of the events giving rise to the PMA's claim in this case occurred in the District of Oregon as required by Section 1391(e)(1)(B).  The Board's contention that "nearly all of the operative events giving rise to this action arose and are continuing to take place within the District of Oregon" (Def. Mem. at 11) is simply incorrect.  The instant case challenges whether the NLRB had authority to issue a single decision – the August 13 Decision issued in "Washington, D.C."  PMA's complaint does not challenge or debate any event that occurred outside of the District of Columbia.  See *infra*, Section II.C.1.c, for a more detailed discussion on why PMA's claim arose from the District of Columbia.

The Board has therefore failed to establish that venue is appropriate—and thus this case "might have been brought"—in the District of Oregon.  The Defendant's Motion should thus be denied regardless of the balancing factors ordinarily at issue in Section 1404(a) transfer motions.

### C.    Even Assuming Arguendo The Board Had Satisfied The "Threshold" Requirements, This Court Should Not Transfer The Case To The District of Oregon.

Even if the Board had met the threshold prerequisites for a transfer – which they cannot – the relevant private and public interest factors do not favor a transfer, let alone tilt "*strongly* in favor of the defendant*" as the Board is required to prove.  Indeed, the Board's Motion is

---

[5] PMA, a nonprofit mutual benefit corporation incorporated under the laws of the State of California, is a multi-employer collective-bargaining agent for its members, which include the approximately 50 stevedore companies, marine terminal operators, and maintenance and repair contractors who employ longshoremen and other categories of dockworkers at waterfront facilities located at ports in California, Oregon and Washington as well as the approximately 20 ocean carriers who engage the stevedore companies, marine terminal operators, and maintenance contractors to load and unload cargo from their seagoing vessels.  However, "[v]enue for an association is 'determined by looking to the residence of the association itself rather than that of its individual members.'"  *Clark & Reid Co. v. United States*, 804 F.2d 3, 5 (1st Cir. 1986) (quoting *Denver & Rio Grande W. R.R. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 559-60 (1967)).

unprecedented attempt to remove from D.C. a case with national implications that challenges a federal agency decision issued in the District of Columbia.

As the Board's motion explains, decisions in this district routinely have cited a common list of private and public interest factors in determining whether to exercise discretion and transfer the case under Section 1404(a).  The private interest factors include:  (1) plaintiff's chosen forum; (2) defendant's preferred choice of forum; (3) where the claim arose; (4) convenience of the parties; (5) convenience of witnesses; and (6) ease of access to sources of proof.  *See, e.g.*, *Wyandotte*, 825 F. Supp. 2d at 265.[6]  The public interest factors include:  (1) the local interest in making local decisions regarding local controversies, (2) the relative congestion of the transferee and transferor courts, and (3) the potential transferee court's familiarity with the governing law.  Def. Mem. at 10-11; *Wyandotte*, 825 F. Supp. 2d at 265.

The private and public factors weigh strongly against a discretionary transfer, especially under the "heavy burden" imposed on Defendant in order to succeed with a Section 1404(a) motion.

    1.    The Private Factors Strongly  Favor Keeping The Case In The District of Columbia, The Locus Of The Challenged Agency Action

    a.    *PMA's Choice of Forum Should Be Afforded Substantial Weight*

"A plaintiff's choice of forum is ordinarily entitled to deference."  *Home Builders*, 675 F. Supp. 2d at 179 (citation omitted); *see also, e.g.*, *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12-13, 18 (D.D.C. 2000) (denying motion to transfer in federal agency case and citing

---

[6] PMA agrees with the Defendant that only private interest factors (1), (2), and (3) are relevant to its motion.  Def. Mem. at 14, n.16.  The Board asserts the "ease of access to the sources of proof" (factor 6) *may* be relevant and slightly weigh in favor of transfer.  *Id.* at 14.  To the contrary, if it is at all relevant, this factor plainly favors the District of Columbia as under the Board rules the record was shipped to the District to enable the Members to render the decision.  29 C.F.R. § 102.90.  In any event, the limited administrative record necessary to resolve PMA's complaint will not require any reference to "original documents or evidence" housed anywhere other than on computers.  *See Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010) ("The Court notes that the location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can easily be digitized and transported to any appropriate forum.").

deference to plaintiff's choice of forum).  Courts in this district have been clear that a plaintiff's

forum choice may be overridden only when there is an attenuated connection between the District

of Columbia and the issue under review **and** it is not the plaintiff's home forum.  As the *Home*

*Builders* court explained in summarizing the cases from this district:

> When there is only an "attenuated" connection between the controversy and the
> plaintiff's chosen forum **and** the forum is not the plaintiff's home forum, the
> deference afforded to the plaintiff's choice is diminished. [*citing Otay Mesa Prop.*
> *L.P. v. Dep't of Interior*, 584 F. Supp. 2d 122, 125 (D.D.C. 2008); *Trout*
> *Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C.1996)]. How
> heavily a plaintiff's choice weighs against transfer, therefore, depends on the
> existence of a connection between the underlying case and this district. **If such a**
> **connection exists, the plaintiff's choice of forum is entitled to substantial**
> **deference**, [*citing Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 66 (D.D.C. 2009);
> *Akiachak Native Cmty. v. Dep't of Interior*, 502 F. Supp. 2d 64, 68 (D.D.C. 2007);
> *TOMAC v. Norton*, 193 F. Supp. 2d 182, 196 (D.D.C.2002)], which outweighs the
> deference conferred on the defendant's choice of forum. [*citing Milanes v. Holder*,
> 264 F.R.D. 1, 4-5, 2009 WL 3367497, at *3 (D.D.C. Oct.21, 2009); *Hunter v.*
> *Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C.2007)].

*Home Builders*, 675 F. Supp. 2d at 179-80 (emphases added).[7]  Put another way, as long as there

is "a connection" to the District of Columbia, the Court must not negate a plaintiff's choice of

forum because the defendant wants to litigate elsewhere.  *Id.* at 180 (citing cases).

It is clear that more than just "a connection" to the District of Columbia exists in this

case.  PMA's Complaint targets a single decision issued by the Board, specifically three

Members of the Board, all based in the District of Columbia.  Somewhat ironically, the case the

Board heavily relies on in its Motion (Def. Mem. at 11) demonstrates that PMA's choice of

forum should not be overridden under these circumstances:

> The court determines that because both of the plaintiffs' counts focus on
> interpretation of federal statutes, and because federal government officials in the
> District of Columbia were involved in the decision to reissue the HBA grazing
> permit, this case has some national significance and has a nexus to the District of
> Columbia. . . .

---

[7] PMA's "home forum" is San Francisco, California, where the association is headquartered.  Thus, both the District
of Oregon and the District of Columbia are equally outside the home jurisdiction of the Plaintiff.

*** 

> Accordingly, the court concludes that this action has sufficient nexus to the
> District of Columbia and therefore deserves deference in its choice of forum.

*Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128-29 (D.D.C. 2001).  Notably, in

*Greater Yellowstone*, the officials in D.C. were merely "involved in the decision."  Here, by

contrast, the three D.C.-based officials independently made the decision in question, which again

was "Dated, Washington. D.C. August 13, 2012."

Defendant therefore wrongly asserts that this forum has "no meaningful ties to the

controversy."  Def. Mem. at 11.  The Board begrudgingly admits a "connection with the District

of Columbia [because] the Board is headquartered here, and the Board, in conducting normal

Agency business, issued its administrative Section 10(k) decision here."  *Id.* at 12.  That,

however, is the critical "meaningful tie" to the District of Columbia – the location where the

August 13 Decision was issued by three Board Members sitting in Washington, D.C.  Only this

August 13 Decision, and whether the Board had the statutory power to issue the award, is at

issue.  No other facts or events need be analyzed by this Court.  Courts have routinely recognized

the requisite connection to D.C. based on decision-making in D.C., both in whole and in part.

*See Home Builders*, 675 F. Supp. 2d at 179; *Otay Mesa*, 584 F. Supp. 2d at 126; *Greater

Yellowstone*, 180 F. Supp. 2d at 128-29; *Wilderness Soc'y*, 104 F. Supp. 2d at 13-14; *Akiachak*,

502 F. Supp. 2d at 68.  The Court should afford substantial deference to PMA's choice of forum

because the only challenged decision-making occurred in this district.

      b.    *Defendant's Choice of Forum, Away From Its Home Jurisdiction,*
              *Should Not Be Granted Any Weight*

The Defendant seeks to have PMA's Complaint resolved in the District of Oregon, but as

a federal agency based in D.C., and with a legal challenge premised on a Board decision issued

from D.C., the Plaintiff's choice of forum trumps Defendant's choice.  *See, e.g., Home Builders*,

675 F. Supp. 2d at 180 (finding that because "a connection" between the District of Columbia and the complaint existed, deference to plaintiff's chosen forum "outweighs the deference conferred on the defendant's choice of forum"); *Greater Yellowstone*, 180 F. Supp. 2d at 129 (affording greater deference to plaintiff's choice of forum over defendant agency's preferred forum based on federal officials' connection to District of Columbia). Indeed, the Board's own authority makes clear the Board's choice of forum is not entitled to weight: "Venue statutes serve the purpose of protecting a defendant from the inconvenience of having to defend an action … that is remote […] from where the acts underlying the controversy occurred." Def. Mem. at 12 (quoting *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006)).[8] Here the Board cannot claim it faces "inconvenience" by defending in D.C., its home jurisdiction, a suit challenging an action taken in D.C. In this light, the Defendant's choice of forum plainly does not tip the scales in Defendant's favor, let alone meet the "heavy burden" placed on the Defendant.

c.    *PMA's Narrow Claim Arises Solely From An Administrative Decision Made In The District Of Columbia*

The "where the claim arose" factor also fully supports keeping this action in the District of Columbia. "In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Home Builders*, 675 F. Supp. 2d at 179. While PMA's action is not brought pursuant to the APA, it is an analogous challenge through *Leedom v. Kyne* jurisdiction and targets a single "decisionmaking process" that occurred completely within the District of Columbia. PMA's claim thus derives from this forum. For example, in *Akiachak Native Community*, the court rejected a motion to transfer, reasoning that the agency's rulemaking process "took place in this district," which provided a

---

[8] Much of the rest of the argument the Board advances on this factor (Def. Mem. at 12-13) is repetitive of the last public interest factor and will be addressed therein.

"sufficiently substantial nexus to this district …." 502 F. Supp. 2d at 68. That reasoning applies equally to the NLRB's decision here.

The NLRB argues that "nearly all of the operative events giving rise to this action arose and are continuing to take place within the District of Oregon." Def. Mem. at 11. The Defendant even emphasizes that "the Section 10(k) hearing [] occurred in that district." *Id.* at 15. The hearing itself and which group of employees is entitled to the disputed work at the Port of Portland is not an issue in this action. The Defendant cites to two decisions from this district for the proposition that transfer is appropriate if facts or events occurred outside D.C. Def. Mem. at 13 (citing *Davis v. Am. Soc'y of Civil Eng'rs*, 290 F. Supp. 2d 116, 123 (D.D.C. 2003) and *S.E.C. v. Ernst & Young*, 775 F. Supp. 411, 417 (D.D.C. 1991)). These cases are plainly inapposite. Neither decision involves a Section 1404(a) motion to transfer a case challenging a single administrative decision issued from D.C. Nor does either case undermine the decisions cited above by PMA, which confirm that challenges to agency decisions necessarily involve claims that "arise" from D.C, not the city or state where the facts or administrative hearings occurred. *Davis* held that transfer was appropriate, under Section 1406(a), where a former employee challenged a termination decision made in the Eastern District of Virginia, as "most if not all of the significant events relating to the action occurred across the country and outside [D.C.]." *Davis*, 290 F. Supp. 2d at 123. *Ernst & Young* involved the federal government's civil enforcement action brought in D.C., and the Defendant successfully moved the court to transfer venue on the "convenience of witnesses" factor given the pending trial. *Ernst & Young*, 775 F. Supp. at 416-17. As both parties here agree, the convenience of witnesses factor is not relevant in this case.

14

The Board continually ignores the fact that PMA's Complaint does not even rely on the "operative events" that led to the August 13 Decision, only the August 13 Decision itself.  Prior events or hearings are not the same as the Board's final August 13 Decision.  In fact, the Board's own Section 10(k) regulations make clear that the hearing is an administrative function, not a decisionmaking process, as once the hearing is closed "the proceeding shall be transferred to the Board and the Board shall proceed either forthwith upon the record, or after oral argument, or the submission of briefs, or further hearing, to determine the dispute or make other disposition of the matter."  29 C.F.R. § 102.90.  The hearing officer "makes no recommendation in regard to the resolution of the dispute."  29 C.F.R. § 101.34.  The backdrop of an administrative process outside of the District of Columbia has been found distinct from the decision later challenged.  *See, e.g.*, *Wilderness Soc'y*, 104 F. Supp. 2d at 13-14 (rejecting transfer to Alaska even though an "extensive eighteen-month administrative process … was conducted almost entirely in Alaska").

*****

In the end, the fact that the Board's August 13 Decision, issued in Washington, D.C., derives from events or a hearing occurring in another district does not undermine plaintiff's choice of forum.  If that were the case, then any decision made by a federal agency in Washington, D.C. with a factual background or related events outside the District of Columbia, which is fair to say the majority of federal agency decisions, would automatically negate the plaintiff's choice of forum and undermine the deference afforded to plaintiff's decision.  The Defendant fails to cite a single case where the court granted transfer outside the District of Columbia where the only challenged action occurred wholly within the District of Columbia, and by federal officials serving in the District of Columbia.

In short, the relevant private interest factors all weigh heavily in favor of rejecting the Motion to Transfer.

2.     The Public Factors Also Weigh Strongly In Favor Of This Court Retaining This Action

    a.     *PMA's Case Has Regional And National Implications, Far Beyond The Boundaries Of Oregon*

PMA's Complaint is not about a "local controversy" limited to Oregon. Rather, PMA has taken the step to file its Complaint because the August 13 Decision has far reaching consequences for PMA's entire operation on the West Coast, including California and Washington State. Indeed, the Board's exercise of extra-statutory powers in the August 13 Decision, expanding its jurisdiction to public-sector employees in derogation of the statutory limits, has national implications should this decision be used as precedent to exert jurisdiction in a future NLRB Section 10(k) proceeding.

In order to determine whether a case is "local in nature," and therefore should be transferred, decisions in this district have considered "where the challenged decision was made," "whether the controversy has some national significance," and "whether there was personal involvement by a District of Columbia official." *Otay*, 584 F. Supp. 2d at 126. The court also may consider if the case involves an issue of federal law, or whether it involves issues of local or state property law. *Id.*

Based on these key indicia, PMA's challenge to the August 13 Decision cannot fairly be characterized as "local in nature" to Oregon. The Board's assertion of powers outside the statutory mooring of Section 8(b)(4)(D) has national implications for not only PMA, but many employers, labor organizations, and employees who may be involved in future cases where a group of public-sector workers is competing for work against a group of private-sector employees, as in this case. The Board may use the August 13 Decision to insert itself into the

dispute, based on the precedential effect of the August 13 Decision, if it is allowed to stand. Concern for this scenario is not a "local controversy" confined to Oregon, as "this case presents a controversy over the application of a federal law . . . ." *Otay*, 584 F. Supp. 2d at 126; *see also, e.g.*, *Greater Yellowstone*, 180 F. Supp. 2d at 128-29 (dispute over federal law "has some national significance").

Moreover, as articulated in PMA's Motion for Summary Judgment, filed contemporaneously herewith, the August 13 Decision has placed PMA in an untenable position with respect to its members companies and the ILWU, which threatens to destabilize the Coast-wide collective-bargaining relationship and disrupt operations at the Ports on the West Coast. Dkt. No. 14-1, pp. 8, 21, 35. Ports in Los Angeles, Long Beach, Oakland, Seattle, and Tacoma are much larger, and collectively they transport almost 100 times the container volume as the Port of Portland.[9] The vast majority of PMA's members, and the employees represented by the ILWU, are outside the confines of the relatively small Port of Portland. Again, these facts weigh heavily against labeling PMA's Complaint a "local controversy" limited to the District of Oregon.

Defendant is thus mistaken in its view that PMA's Complaint has "nearly all ties [] to Portland." Def. Mem. at 13. This case, under the Board's view, is just a "local dispute" that will only impact land or citizens in the District of Oregon. *Id.* at 14. Respectfully, the Board does not appreciate how the NLRB's exercise of extra-statutory authority, as evident by the August 13 Decision, harms PMA's operations and labor relations, potentially throughout the entire West Coast, as well as affected national and international commerce. Multiple legal claims and threats

---

[9] http://aapa.files.cms-plus.com/Statistics/NORTH%20AMERICA%20PORT%20CONTAINER%20TRAFFIC%20RANKING%202011.pdf (last visited Oct. 16, 2012).

have been lodged against PMA, with perhaps more threats in the future, based on the Board's

August 13 Decision.  Dkt. No. 14-1, p. 21.

Were this Court to conclude that the District of Oregon does have some level of "local

interest" in the matter, PMA submits that plaintiff's choice of forum, and the connection to the

District of Columbia, still outweigh any such local interest.  As stated by the *Home Builders'*

decision, "this [local interest] consideration is outweighed by the need to grant deference to the

plaintiff's choice of forum given that the plaintiff's claim arose in the District of Columbia."

675 F. Supp. 2d at 180 (denying transfer motion in cases involving review of EPA designation

decision made in the District of Columbia, even though decision impacted land in Arizona).  The

*Akiachak* court likewise held that even if the court's decision "will affect principally" parties and

individuals in another district and will have "an immediate effect only" in that other district, the

overall balance of public and private factors did not favor transferring the case outside of the

District of Columbia.  502 F. Supp. 2d at 68.  The same rationale in *Home Builders* and *Akiachak*

applies here should the Court conclude that the Board's August 13 Decision, and a challenge

brought to the authority to issue that decision, has some local impact in the District of Oregon.

> b.  *The Oregon Court Is Far More Congested Than The District Of Columbia Court*

This Court also should consider PMA's interest in a timely resolution of its Complaint,

given that the August 13 Decision continues to invite further legal action against PMA.  The

"relative congestion of the transferee and transferor courts" is another factor under the "public

interest" category, and here that counsels in favor of this Court's resolution of PMA's

Complaint.  *See, e.g.*, *Wyandotte Nation*, 825 F. Supp. 2d at 266 (citation omitted).  In

*Wyandotte*, this Court cited the Federal Judicial Caseload Statistics, specifically Table C-5, in

order to determine the median time intervals from the filing of a civil action to its disposition in

18

both districts.  *Id.* at 266, n.2.  The 2011 version of Table C-5 shows that the District of Oregon, on average, *takes almost twice as long* to resolve a civil action as this Court.[10]  The District of Oregon has a median time interval of 11.2 months, while this Court has a median time interval of just 6.5 months.  In addition, out of the 94 districts listed on Table C-5, only 13 have a longer median time interval than the District of Oregon.  The District of Columbia conversely has the 13th shortest median interval time.  PMA requests that this Court consider PMA's interest, and the public interest more broadly, in retaining jurisdiction over this case to ensure it is submitted for timely resolution.

c. *Familiarity With the Governing Law Does Not Favor Transfer*

The Defendant asserts that "the courts' familiarity with governing laws – has little bearing here."  Def. Mem. at 15.  PMA generally agrees, but notes that the U.S. District Court for the District of Columbia has a strong and well-earned reputation for effective resolution of challenges to federal agency action.  The Board then goes on to explain that "the District Court in Oregon does not have any less familiarity with the asserted *Leedom v. Kyne* basis for jurisdiction than this Court."  *Id.*  Whether or not this is true, the "familiarity with the governing law" obviously does not <u>favor</u> transfer.  No issue of state or local law, peculiarly to Oregon, is at issue with PMA's Complaint.   Instead, PMA's Complaint is completely governed by federal law, namely whether the August 13 Decision issued in D.C. meets the statutory prerequisites of Section 8(b)(4)(D).  *Otay*, 584 F. Supp. 2d at 126.  Defendant cannot rely on this factor to support a transfer motion.

*****

---

[10] Table C-5 available at:
http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2011/tables/C05Mar11.pdf (last visited October 16, 2012).

In conclusion, as the private interest factors heavily favor this Court's resolution of PMA's Complaint, so do the public interest factors. The Defendant has not met its "heavy burden" necessary for transfer under Section 1404(a).

### 3. Any Generalized "Interest of Justice" Factor Actually Favors This Court's Jurisdiction And Resolution Of The Action

The final section of the Board's Motion attempts to show that "justice" favors overriding Plaintiff's choice of forum, citing mainly to the fact that Judge Simon has presided over other litigation between the Board and the ILWU. Def. Mem. at 16-17. Nowhere does the Board explain how this separate "factor" under Section 1404(a) would supercede the private and public interest factors. In any event, it is not in the "interests of justice" to have PMA's claim – a narrow claim premised on *ultra vires* agency action in D.C. – added to the docket of the District of Oregon, where PMA is *not even a party* to the Board's two pending Section 10(l) cases, and where the Section 301 suit filed in June 2012 turns on whether PMA and the ILWU may enforce its *contractual* claims against PMA-member company ICTSI.[11] Most importantly, the instant case rests on whether the Board had authority to render the August 13 Decision, not the factual details of the underlying dispute, any litigation history, or the correctness of that decision. This Court only need read a summary of the factual background, and then it may focus solely on two

---

[11] The Board incorrectly contends that "PMA failed to notify this Court of those related actions on this Court's Civil Cover Sheet Form that accompanied the instant Complaint." Def. Mem. at 3, n.5. *First*, the only action that even cites the August 13 Decision at issue in this case – and the only issue in this case – is a Board initiated action filed **after** the instant case was filed. *Ronald K. Hooks v. ILWU*, 3:12-cv-01691-SI (D. Or.). That case obviously could not have been included on the Civil Cover sheet filed by PMA because it was filed by the Board on September 19, 2012, twelve days after PMA filed the instant Complaint with this Court. *Second*, the Board apparently agrees that these actions are not "related cases" because when the Board filed its Civil Cover Sheet on September 19, it did not list as "related cases" PMA's current action in this Court. Nor did the Board list as a "related case" the Section 301 suit filed earlier by PMA and the ILWU. *Int'l Longshoremen & Warehouse Union & Pac. Maritime Ass'n. v. ICTSI Oregon, Inc.*, Case No. 3:12-cv-01058-SI (D. Or.) (filed June 13, 2012). *Third*, and most importantly, per the Civil Cover Sheet instructions, PMA continues to believe that the instant litigation involves distinct factual and legal issue from any of the other litigation that was then pending in the District of Oregon, and thus are not "related cases" for purposes of the civil cover sheet. While the other litigation may provide context for this case, this Court need not analyze any other case, the facts presented in those cases, or the legal issues that are implicated. PMA's current action stands alone, even if this Court's ultimate judgment clarifies the rights of the parties in other litigation, such as the Board's later-filed Section 10(l) action against the ILWU.

focused legal questions – (1) can the Board issue a work assignment award under Section 8(b)(4)(D) and Section 10(k) where one of the two employee groups vying for the work is undisputedly comprised of public-sector workers; and (2) can PMA assert jurisdiction in federal court under *Leedom v. Kyne*?[12]  These legal questions, as presented by PMA, would not be addressed more efficiently or effectively in the District of Oregon and have implications nationwide, not just in Oregon.

Defendant contends that the District of Oregon "is already intimately familiar with the underlying dispute and the Board's Section 10(k) decision."  Def. Mem. at 4.  The Defendant also claims that "[i]t makes judicial and practical sense to have all litigation relating to the award of the same disputed work considered and resolved together."  *Id.* at 12.  The Board further presumes that the District of Oregon has "familiarity with the issues" that would result in the court making "prompt rulings to resolve this dispute."  *Id.* at 15.  These arguments are superficial and fail to hold water when scrutinized.

No judge in the District of Oregon, including Judge Simon, has yet considered or even been presented with the two legal questions referenced above.  Assuming that PMA's Complaint was later brought before Judge Simon, he would have to "start from scratch" with respect to PMA's specific Complaint, despite any knowledge of the parties, factual events, or prior or pending litigation.  *See Greater Yellowstone*, 180 F. Supp. 2d at 129-30 (finding that pending action in the other district involved an issue "different from the instant case," even where the underlying facts overlapped and the court deemed the issues "closely related").  Only the Board's September 19, 2012 Petition for a Section 10(l) injunction even cites the Board's August 13 Decision.  And that case, of course, is a *later* filed action.  ICTSI's limited reference to the

---

[12] As for the Section 301 litigation, any order by this Court declaring the August 13 Decision null and void would simply allow that case to proceed on its substantive merits.  There would be no "conflicting" judgments on the validity of the August 13 Decision.

August 13 Decision in PMA's pending Section 301 action, in a response to the ILWU's motion to dismiss counterclaims, also does not present either legal question in PMA's Complaint.  Def. Mem. at 7, n.11.  There simply is no evidence that Judge Simon has even a "running start" on the precise legal questions in the current action.

Finally, the Board's professed concern with "inconsistent judgments" between districts is misplaced.  PMA is presenting unique legal questions to this Court.  Only the Board's *later-filed action* against the ILWU could possibly include a question of the Board's authority to issue the August 13 Decision.  It is unclear whether the ILWU can or will even raise such an issue and whether and when Judge Simon would address that question if raised.  Judge Simon must analyze the Board's September 19, 2012 Section 10(l) petition under a "just and proper" standard of review, and he may grant injunctive relief without ruling on the ultimate merits of the August 13 Decision or the unfair labor practice complaint against the ILWU.  *See Frankl v. HTH Corp.*, 650 F.3d 1334, 1335 (9th Cir. 2011).  Even if a related issue is raised in the Board's Section 10(l) case, PMA filed this action before the Board filed its Section 10(l) action and the Board cites no authority that a discretionary transfer is appropriate in favor of a later-filed case, particularly in a case like this where the public and private interest factors overwhelmingly favor this Court retaining the case.  Indeed, the court in the *FTC v. Cephalon, Inc.* decision cited by Defendant distinguished another case declining transfer because the "transferee case was commenced after the case at bar and was at a less advanced stage of litigation."  551 F. Supp. 2d 21, 30 (D.D.C. 2008) (citing *Star Lines, Ltd. v. Puerto Rico Mar. Shipping Auth.*, 442 F. Supp. 1201, 1208 (S.D.N.Y.1978)).

At bottom, the District of Oregon is not "poised to address the issues" in PMA's Complaint, despite what the Board's motion to transfer would have this Court believe.  Def.

Mem. at 17.  This makes it curious why the Board considers it beneficial to have the agency invest the time and resources to file an 18-page motion to transfer venue, and presumptively a reply memorandum in support of the motion, rather than address the merits of PMA's Complaint through dispositive motions.[13]  This Court is better suited to address PMA's Complaint and rule on the discrete legal questions presented efficiently and effectively, given that it can focus solely on PMA's challenge to the August 13 Decision, which was issued in D.C., without being bogged down by the factual background or other, distinct legal issues in other, pending litigation.

## III.   Conclusion

Upon scrutiny, Defendant's Motion to Transfer does not meet the required elements for a discretionary transfer to the District of Oregon.  The Board cannot show that the threshold elements for transfer – that the District of Oregon would have subject matter jurisdiction (which it does but the NLRB contends it does not) and would be a proper venue – exist here.  Moreover, since the Board outright rejects any court's subject matter jurisdiction, and it has announced that it intends to file a Motion to Dismiss with this Court, this Court will have to fully resolve the merits of this case in addressing a threshold question in the instant motion.

Were the Board able to satisfy the threshold elements for transfer, the Section 1404(a) balancing factors not only go against the Board, they do so heavily.  PMA's Complaint involves a specific and narrow challenge to the Board's August 13 Decision and the Board does not cite a single case transferring a case where the decision at issue was rendered in the District.  To the contrary, courts in this district have routinely rejected transfer motions where D.C.-based

---

[13] Shortly after PMA filed its September 7, 2012 Complaint, PMA's attorneys contacted the NLRB's attorneys and proposed that the parties submit a joint briefing schedule in order to have the case resolved in a timely and efficient manner.  Declaration of David R. Broderdorf, ¶ 3.  PMA even offered the option of cross-dispositive motions to further simplify and expedite the briefing process.  *Id.* at ¶ 4.  The NLRB rejected PMA's offer.  *Id.* at ¶ 5.  Because it is plausible that the NLRB's motion to transfer represents an effort in delay or forum shopping, such possible motivation behind the transfer motion also "weighs against granting the defendant[']s[] motion." *Greater Yellowstone*, 180 F. Supp. 2d at 130.

officials were involved in the decisionmaking process.  No matter how much the Board summarizes background facts or events within the District of Oregon, the public and private interest factors overwhelmingly demonstrate that PMA's challenge to a decision issued in the District of Columbia should be adjudicated in the District of Columbia.  Because the Board fails to meet its "heavy burden" for a transfer in this context, the Motion to Transfer should be denied.

Dated:  October 16, 2012

Respectfully submitted,

/s/ Howard M. Radzely
MORGAN, LEWIS & BOCKIUS LLP
Howard M. Radzely (D.C. Bar #437957)
Charles I. Cohen (D.C. Bar #284893)
David R. Broderdorf (D.C. Bar #984847)
1111 Pennsylvania Avenue, NW
Washington, D.C.  20004
(202) 739-5996

Counsel for PACIFIC MARITIME
ASSOCIATION