IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 12-cv-01477 BAH |
| ) | |
| NATIONAL LABOR RELATIONS BOARD ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF
MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)**

PMA's arguments fail to alter the balance of relevant factors under 28 U.S.C. § 1404(a) that tip strongly in favor of transfer to the District Oregon. Indeed, PMA has resorted to a transparently, overly narrow characterization of the dispute as involving only the Board's alleged *ultra vires* decision. PMA would have the Court disregard the civil actions in the District of Oregon to which PMA and the Board already are party, which arise out of the identical work assignment dispute at the Port of Portland, and which will be directly impacted by any decision regarding the legality of the Board Section 10(k) decision. Accordingly, this case should be transferred to the District of Oregon in the interests of justice, which factor alone should warrant a transfer of this suit.[1] For the reasons discussed herein and in the Board's Motion to Transfer (Dkt. No. 12), this Court should, in its discretion, conclude that the Board has met the threshold

---

[1] While PMA essentially argues that *its* choice of forum is determinative (Opp., Dkt. No. 15, at 10-11), PMA would have this Court ignore PMA's own choice of the District of Oregon as the forum to decide its closely related suit, *PMA v. ICTSI* (3:12-cv-01058-SI), that seeks enforcement of arbitration rulings significantly affected, if not controlled, by the Board's Section 10(k) award. The Board submits that the interests of justice in this case sufficiently outweigh PMA's choice. *See infra* pp. 6-10.

requirement and established the requisite factors to support a transfer to the District of Oregon, by showing (i) that venue would be proper in Oregon, and (ii) that a balance of the relevant private and public interest factors, and the interests of justice, weigh in favor of a transfer to that forum.

### 1. Section 1404(a) does not require the existence of subject matter jurisdiction in the transferor or transferee court.

Contrary to PMA's assertions, this Court may transfer this case without first concluding it it has subject matter jurisdiction. The well-settled threshold consideration in a Section 1404(a) motion to transfer is that the proposed district must be a district "where [the action] might have been brought." 28 U.S.C. § 1404(a); *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 269 (D.D.C. 2011); *Trout Unlimited v. Dep't of Agric.,* 944 F. Supp. 13, 16 (D.D.C. 1996). Once that threshold is met, the court must then consider and balance factors of convenience of the parties and witnesses, and the interests of justice, to determine whether it *should* be transferred. *See FTC v. Cephalon,* 551 F.Supp.2d 21, 25 (D.D.C. 2008) (describing the private and public interest factors to be balanced).[2] Notwithstanding PMA's reliance on out-of-district cases (Plaintiff's Opposition ("Opp."), Dkt. No. 15, at 3, 4-6), decisions in this District do not require a court, before ordering transfer, to find there exists subject matter jurisdiction in either itself or the proposed district court. *See Resolution Trust Corp. v. Davis*, 779 F. Supp. 181, 182 (D.D.C. 1991).

---

[2] In this circuit, courts are asked to examine challenges to venue particularly carefully "to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). Otherwise, "a plaintiff could bring a suit here that properly should be pursued elsewhere." *Id. See generally In re Microsoft Corp.,* __ F.3d __, 2011 WL 30771, at *2-3 (Fed. Cir. Jan. 5, 2011).

PMA's arguments for a different standard (Opp. at 6-7) do not change the analysis employed in this District. While PMA questions this District's reliance on the Supreme Court's *forum non conveniens* decision in *Sinochem International Co. v. Malaysia International Shipping Corp.,* 549 U.S. 422 (2007) (Opp. at 7), that decision has been applied by this Court, entirely appropriately, to motions to transfer under Section 1404(a). *See Kazenercom TOO v. Turan Petroleum, Inc.,* 590 F. Supp. 2d 153, 156-57 n. 5 (D.D.C. 2008). The Supreme Court in *Sinochem International* concluded that a district court may dismiss a case on *forum non conveniens* grounds prior to ruling on whether it has jurisdiction. The Court reasoned, in part, that initial consideration of jurisdiction would be appropriate only where "a court can readily determine that it lacks jurisdiction," and that resolution "will involve no arduous inquiry." 549 U.S. at 436. But where subject matter jurisdiction "is difficult to determine . . . the court properly takes the less burdensome course and transfers the case." *Id.* It is particularly appropriate here to transfer before deciding subject matter jurisdiction, where PMA's assertion of jurisdiction is dependent upon whether there is merit to PMA's claim that the Board's Section 10(k) decision violates a clear statutory requirement.[3] Thus, it can hardly be concluded that the jurisdictional issue here can be readily determined. *See also Resolution Trust Corp. v. Davis*, 779 F. Supp. at 182; *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.C.C. 2009). In short, under this District's law, transfer may be ordered regardless of whether this Court actually has subject matter jurisdiction to decide the case.

---

[3] As stated in the Board's Motion to Transfer papers (Statement in Support at 15, n. 18), this Court's jurisdiction under *Leedom v. Kyne,* 358 U.S. 184 (1958), can only exist if the Court first concludes, as PMA claims, *inter alia,* that the Board's order was made in excess of its delegated powers and contrary to a clear provision of the National Labor Relations Act ("NLRA"). That is, in this case, as in most so called *Leedom*-based lawsuits, the merits of the plaintiff's claim of agency wrongdoing and the basis for jurisdiction are really the same question.

2. **The Court should look to the entire sequence of events underlying PMA's claim in determining the more appropriate venue.**

PMA should gain no support for its choice of venue by its simplistic assertion that its Complaint "targets a single 'decisionmaking process' that occurred completely within the District of Columbia" (Opp. at 13) and that, in its opinion, venue would not be appropriate in the District of Oregon (Opp. at 7-8). The question for proper venue in a proposed district is whether it is a district where "a substantial part of the events . . . giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(e)(1).[4] Under the various sections of the amended venue statute, courts interpreting whether "events giving rise to the claim" are sufficiently substantial to support venue, have held that a court should look not to a single triggering event or action prompting the action, but to the entire sequence of events underlying the claim.[5] *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001). *See Mitrano v. Hawkes,* 377 F.3d 402, 405 (4th Cir. 2004) ("a court should not focus only on matters that are in dispute or that directly led to the filing of the action, but to the entire sequence of events underlying the claim"); *FC Investment Group LC v. Lichtenstein*, 441 F. Supp.2d 3 (D.D.C. 2006) (court must look to the "entire sequence of events"); *Estate of Moore v. Dixon*, 460 F. Supp.2d 931 (E.D. Wis. 2006) ("for events to be considered 'substantial' under the statute, it is sufficient . . . to establish that the events occurring in the forum district 'were part of the historical predicate for the instant suit.'"). Accordingly, that PMA's challenge here is to the Board's decision issued out of its headquarters

---

[4] As PMA agrees (Opp. at n. 4), the standard for venue under Section 1391(e)(1) and Section 1391(b)(2) is the same. *See Thornwell v. U.S.*, 471 F. Supp. 344, 357 (D.D.C. 1979). While reference to section 1391(e)(1) is appropriate here, venue would be proper in Oregon under either section.

[5] Of course, venue can be proper in more than one district. *See Lamont .v Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978).

office in D.C. should not defeat transfer, where the "entire sequence of events" leading up to the Board's decision and all other operative events occurred in Oregon.

    The cases relied upon by PMA to establish that decision-making in District of Columbia should control the "requisite connection" factor for the District to retain venue regardless of what has occurred elsewhere (Opp. at 12) are not analogous here. Most of those cases did not involve the pendency of related lawsuits in another proposed venue as a factor that deserved to be considered regarding a transfer.[6] Indeed, in *Otay Mesa Property L.P. v. Department of Interior*, in denying transfer, the Court distinguished cases where courts had granted transfer where other lawsuits were already pending in the transferee court. 584 F. Supp.2d 122, 127 n. 4 (D.D.C. 2008) (citing *Cal. Farm Bureau Fed'n v. Badgley*, No. 02-2328 (RCL), 2005 WL 1532718, at *1-2 (D.D.C. June 29, 2005) and *Northwest Forest Res. Council v. Babbitt*, No. 93-1579 (JHG), 1994 WL 908586, at *3-4 (D.D.C. Apr. 13, 1994)).[7] In the one case cited by PMA that did involve related litigation in the proposed transferee court, *Greater Yellowstone Coalition*, the Court acknowledged that a pending related case could support a decision to transfer a case to that

---

[6] These include *Nat'l Ass'n of Home Builders v. EPA,* 675 F. Supp. 2d 173 (D.D.C. 2009), *Akiachak Native Community v. Dep't of Interior*, 502 F. Supp. 2d 64, 68 (D.D.C 2007) and *The Wilderness Soc'y v. Babbitt,* 104 F. Supp. 2d 10, 13-14 (D.D.C. 2000).

[7] *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d at 13-14 (Opp. at 15), is further distinguishable. In that case, the court concluded that the administrative process that occurred in Alaska was outweighed by evidence of heavy involvement of agency officials in D.C., highlighting the significance of the issue to the nation. Specifically, the Court found that the Secretary of the Interior's significant involvement in the review and decision-making process at issue "was far from routine," where the Secretary made a six-day visit to the area, met and was briefed by local residents and government and industry officials, and then briefed the public in D.C. By contrast, here the Board's involvement – issuance of the 10(k) decision – is a "routine" work assignment decision which is part of the Board's 10(k) process, with the greatest impact of its determination felt by the parties seeking the work, and local businesses and employees in Portland. *See also Wyandotte Nation v. Salazar*, 825 F.Supp.2d 261, 269 (D.D.C. 2011) (transfer granted from D.C. to District of Kansas, distinguishing *Wilderness Society*, because "the agency action in dispute appears to be a 'run-of-the-mill' administrative decision").

forum, but concluded that the pendency of one potentially related case was "very different from the instant case: [the other case] focused on the impact of the Horse Butte Capture Facility on eagles and other birds, whereas this case focuses on the reissuance of the Horse Butte grazing permit and addresses its effect on the bison." 180 F. Supp.2d 124, 129-30 (D.D.C. 2001).

There also is no merit to PMA's suggestion that all challenges to agency decisions must be brought in the District of Columbia because they "involve claims that 'arise' from D.C., not the city or state where the facts or administrative hearings occurred" (Opp. at 14). The Board has on various occasions defended *Leedom v. Kyne* challenges like this, brought in response to a Board decision, in districts where the disputes arose, rather than in the District of Columbia where the decision issued. *See, e.g.*, *Chilton v. NLRB et al.*, No. 2:12-cv-00742 (S.D. Ohio, filed Aug. 17, 2012) (challenge to Board's decision issued in Washington, D.C. refusing to overturn a Regional Director's dismissal of a certification petition on basis that President's recess appointments of Board members were invalid); *Ashley v. NLRB*, 454 F.Supp. 2d 441 (M.D.N.C. 2006) (employee's challenge to NLRB's Washington, D.C. denial of motion to intervene in a representation proceeding in order to asserting objections to the conduct of union election), *aff'd*, 255 Fed. Appx. 707 (4th Cir. 2007)). Indeed, a rule finding the District of Columbia the presumptively appropriate, if not only, venue for extraordinary review of non-final Board decisions would be inconsistent with Congress providing in Section 10(e) of the NLRA that the NLRB may not seek enforcement of its final agency decisions in the District of Columbia Circuit, but rather, only in the circuit wherein the violation occurred or where the charged party does business.[8]

---

[8] While persons aggrieved by a final Board order can file in the D.C. Circuit for review of the decision, they also are authorized to seek review in any other circuit wherein the violation was found to occur or where the charged party does business. 29 U.S.C. § 160(f).

   3. **The closely related cases pending in the District of Oregon strongly support transfer to that forum in the interests of justice.**

There is also no merit to PMA's suggestion that the "interest of justice" factor, including related litigation in another district, should not be evaluated independently or given great weight (Opp. at 20). *See Comptroller of the Currency v. Calhoun First Nat'l Bank,* 626 F. Supp. 137, 141 (D.D.C. 1985); *Barham v. UBS Fin. Svcs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("[T]he most significant factor weighing in favor of transferring this case is the presence of closely related litigation."); *Holland v. A.T. Massey Coal,* 360 F. Supp. 2d 72, 77 (D.D.C. 2004) ("[T]he fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor of a transfer under Section 1404(a)."); *Reiffin v. Microsoft*, 104 F. Supp. 2d 48, 55-56 and nn.14, 15 (D.D.C. 2000) (citing cases).[9]  Indeed, in *Comptroller of the Currency v. Calhoun First Nat'l Bank,* 626 F. Supp. 137 (D.D.C. 1985)*,* where there were at least five related, albeit legally distinct, actions pending in the Northern District of Georgia, this Court granted a transfer to Georgia because "it would probably result in a waste of judicial and other resources to litigate one case arising out of these facts in the District of Columbia and all the others in Georgia." *Id*. at 141.

This Court has observed that the interest of justice is served by transferring a case to a forum where there is pending related litigation with overlapping facts, and where legal issues may be impacted.  In *Federal Housing Finance Agency v. First Tennessee Bank National*

---

[9] It is settled that the term "interest of justice" includes considerations such as the desire to avoid multiple litigation arising from a single event, to keep related litigation together, to conserve judicial resources, and to consider the regional nature of a dispute. *See Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 267-68 (D.D.C. 2011) (the proposed district, and the circuit court, had "specialized knowledge of both the parties," and "their history of litigation," supporting the public interest of judicial efficiency); *Northwest Forest Res. Council*, No. 93-1579 (JHG), 1994 WL 908586, at *3*; Oil, Chemical, & Atomic Workers v. NLRB*, 694 F.2d 1289, 1300 (D.C. Cir. 1982) (interpreting "interest of justice" language to include consideration of "whether the impact of litigation is local to one region").

*Association,* 856 F. Supp. 2d 186, 195 (D.D.C. 2012), where the FHFA opposed a transfer motion, claiming, similar to PMA here (Opp. at n. 12), that "there is no risk of inconsistent judgments since a judge will still have to decide [its petition to enforce the subpoenas] regardless of any outcome in the . . . Securities Action," the Court found that argument "missed the mark," stating:

> While it is true that some court will eventually be tasked with ruling on the FHFA's petition, it makes sense for *one* court to evaluate both that petition and the applicability of a PSLRA stay in the Securities Action due to the presence of overlapping issues.  Accordingly, given the risk of inconsistent judgments attendant with retaining this case, the Court adheres to the principle that '[t]he interests of justice are better served when a case is transferred to the district where related actions are pending.'  *Reiffin [v. Microsoft],* 104 F. Supp. 2d [48] at 56 [D.D.C. 2000] (quoting *Martin-Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987)).

*See also Northwest Forest Res. Council*, No. 93-1579 (JHG), 1994 WL 908586 (D.D.C.), at *3 ("the legal issues, although not identical, so overlap that plaintiffs concede that a ruling in this case 'would preempt the claim before' the proposed court).

Here, where the related actions pending in Oregon may be impacted by a decision in this case, the interest of justice factor weighs heavily in favor of transfer.  The related cases, as previously described (Motion to Transfer, Statement in Support, Dkt. No. 12-1, at 6-9), arise out of competing claims by the ILWU and the IBEW for disputed work at the Port of Portland.  That dispute prompted:  the filing of an unfair labor practice charge alleging as a violation of the NLRA, the conduct of the Board's Section 10(k) hearing, and the issuance of the Section 10(k) determination PMA challenges here.  While PMA here narrowly focuses its challenge on the Board's decision issued out of Washington, D.C., the administrative proceedings underlying the Board's decision were conducted in the Board's Regional offices, and allowed for the development of the operative facts and administrative record upon which the Board relied.  The same 10(k) decision, under settled law, would also ordinarily preclude enforcement of any

8

inconsistent arbitration award of the same disputed work to another union, regardless of which ruling –the 10(k) or arbitration - issued first. *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964). It is thus confounding why PMA would assert that its Complaint here "does not even rely on the 'operative events' that led to the August 13 Decision." (Opp. at 15). Indeed, PMA itself has laid out these facts in support of its Motion for Summary Judgment *in this case* (Dkt. No. 14). While PMA minimizes the fact that ICTSI has raised the same Section 10(k) award as a defense in PMA's District of Oregon suit to enforce arbitration rulings (Opp. at 21-22), PMA nonetheless acknowledges that "this Court's ultimate judgment" in the instant case may clarify "the rights of the parties in other litigation." (Opp. at 20 n. 11).[10] Thus, that PMA is not party to the Board's pending Section 10(l) proceedings in the District of Oregon in no way diminishes the weight of the interest of justice factor favoring transfer, because PMA is a party plaintiff to the arbitration enforcement action in the District of Oregon, where the validity of the Board's Section 10(k) decision holds great significance.[11] *See Carey v. Westinghouse*, 375 U.S. at 272. Moreover, as PMA has also acknowledged (Opp. at 21), the Board's 10(k) award is directly relied upon in support of the Board's second 10(l) Petition. While it is correct that this second proceeding was filed shortly after the instant case, it would have made little sense for the Board to have filed it in any court other than where its initial 10(l) proceeding and other related cases were already pending.

---

[10] PMA's suggestion that only the outcome of the Board's later-filed Section 10(l) action in Portland depends upon the 10(k) decision challenged here is incorrect (Opp. at 21). *Carey v. Westinghouse Elec. Corp.*, 375 U.S. at 272 (once Board decides work dispute pursuant to Section 10(k), its decision takes precedence over even a previously issued contrary arbitrator's award).

[11] The District of Oregon has assigned all of these related cases to Judge Simon. That Judge Simon has not *yet* considered the validity of the 10(k) decision (Opp. at 21-22) is beside the point. No "running start" (Opp. at 22) on the precise legal question is required for transfer of venue. *See Comptroller of the Currency,* 626 F. Supp. 137, 141 (transfer supported by the fact that there were "five related actions pending in various stages" in another court).

In short, there can be no dispute that the Board's Section 10(k) decision is just *one* administrative part of a dispute that has given rise to various claims and actions in the District of Oregon. While PMA's arbitration enforcement action pursues contractual claims to obtain the disputed work for the ILWU, a different legal claim than PMA raises here, the two proceedings are inescapably intertwined as the Portland suit certainly will be impacted by the result of this one, as will the Board's second Section 10(l) action in Portland. In these circumstances, transfer is warranted. *See Northwest Forest Res. Council*, No. 93-1579 (JHG), 1994 WL 908586, at *3 (motion to transfer granted, largely because "a ruling in this case 'would preempt the claim before' the proposed court"); *Comptroller of the Currency,* 626 F. Supp. at 141 (transferring an action to a district which had cases sharing "the same factual underpinning," even though the actions in the transferee court concerned different legal issues); *FTC v. Cephalon, Inc.,* 551 F. Supp. 2d 21, 30 (D.D.C. 2008) (court granted transfer over plaintiff FTC's objection, given that there were pending related cases, and noting "that some courts in some instances have seen fit in their discretion to deny transfer in the face of parallel litigation does not significantly aid the FTC's position here because the transfer inquiry is inherently tied to the specific circumstances of a given case.").[12]

4. **This case arises out of a highly public local controversy and therefore supports transfer.**

The D.C. Circuit has recognized that "[t]here is a local interest in having localized controversies decided at home." *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983) (citing *Gulf*

---

[12] While PMA cites statistics from both courts to demonstrate the speed by which this Court could resolve the dispute, the District of Oregon has, in the relevant cases, scheduled prompt hearings upon the filing of motions by the parties. *See,* for example, in *Hooks v. ILWU*, 3:12-cv-01088, Dkt. No. 61 (Order scheduling hearing on November 6, 2012 to hear argument on Board's September 19. 2012, 2012 Motion for Order to Show Cause and Petition for Civil Contempt and Defendant's September 20, 2012 Motion to Strike Petition, and inviting parties to submit briefing setting forth reasons why the court should schedule an earlier hearing). *Id.*

*Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). PMA argues (Opp. at 16-17) that the instant Complaint is "not about a 'local controversy,'" claiming that the Board decision's reach to ports in California and Washington gives the case "national implications,"[13] such that the case deserves to be heard in the District of Columbia. Regardless of the implications this case may have beyond Portland, the resolution of the entire controversy will directly impact and have the most significant implications for the longshoremen, electricians, and competing unions at the Port of Portland, as well as the impacted neutral shipping companies doing business at the Port. The interests of justice would thus better be served if this case were decided in the District of Oregon, rather than in a venue across the country. *See Akiachak Native Community v. Dep't of Interior*, 502 F.Supp.2d at 68 (concluding that local interest factor supports transfer, rejecting argument that the relief sought invalidating DOI regulation had national application to all federally recognized tribes, where the "case will have an immediate effect only felt in Alaska").

Moreover, PMA's suggestion that this case has "national implications" for future 10(k) litigants (Opp. at 16) proves too much. All NLRB decisions have potential precedential effects nationwide, but Congress nonetheless understood, in crafting the NLRA's enforcement and review provisions, that judicial review typically will be more appropriate where the direct, immediate impact will be felt. Here, that is in Portland. PMA's "national implications" assertion simply does not show that this District is more appropriate for resolving this case. *See Southern Utah Wilderness n. Norton*, 2002 WL 32617198, *3 (D.D.C. June 28, 2002) (transferring an action from D.C. to Utah despite the plaintiff's claim that the environmental controversy had nationwide importance); *Sierra Club v. Flowers*, 276 F.Supp. 2d 62, 71 (D.D.C.

---

[13] Of course, both Washington and California are within the Ninth Circuit, where any appeal of a decision from the District of Oregon would lie.

11

2003) (transfer from D.C. to Florida warranted, where Florida had great local interest, even though controversy had a "national aspect," and "plaintiff's claims invoke federal law, relate to the Everglades, . . . are brought by national environmental organizations, . . . [and] the decision was the subject of two national news articles . . . ."); *FTC v. Cephalon*, 551 F.Supp.2d at 27-28 ("the mere fact that the District of Columbia is the nation's capital does not mean that decisions from this Court have any additional nationwide effect beyond that of other courts."); *Starnes v. McGuire,* 512 F.2d 918, 928 (D.C. Cir. 1974) (there is no "blanket rule that 'national policy' cases should be brought" in the District of Columbia).

In sum, Section 1404(a) is a "federal judicial housekeeping measure" that allows a district court to "authorize a change of courtrooms" based on an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 636-37 (1964); *SEC v. Savoy Indus.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978). Here, the considerations of the interests of justice, balanced with the private and public interest factors, favor transferring this case to Oregon.

## CONCLUSION

For the foregoing reasons, and the arguments set forth in its initial Motion to Transfer and Statement in Support, Defendant NLRB respectfully requests that this case be transferred to the District of Oregon pursuant to 28 U.S.C. § 1404(a).

    Respectfully submitted,

    s/ Eric G. Moskowitz
    ERIC G. MOSKOWITZ
    Assistant General Counsel
     for Special Litigation
    National Labor Relations Board
    1099 14th Street, N.W.
    Washington, D.C. 20570
    Phone: (202) 273-2930
    Fax: (202) 273-1799
    E-mail: Eric.Moskowitz@nlrb.gov
    D.C. Bar No. 184614

    NANCY E. KESSLER PLATT
    Supervisory Attorney
    Special Litigation Branch
    Phone (202) 273-2937
    E-mail: Nancy.Platt@nlrb.gov
    D.C. Bar No. 425995

    DENISE F. MEINERS
    Attorney
    Special Litigation Branch
    Phone: (202) 273-2935
    E-mail: Denise.Meiners@nlrb.gov
    D.C. Bar No. 433041

    KEVIN P. FLANAGAN
    Attorney
    Special Litigation Branch
    Phone: (202) 273-2938
    E-mail: Kevin.Flanagan@nlrb.gov

Dated: October 26, 2012    Maryland Bar Member