IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )  Case No. 12-cv-01477 BAH |
| | ) |
| NATIONAL LABOR RELATIONS BOARD, | ) |
| | ) |
| Defendant. | ) |

_____

**NATIONAL LABOR RELATIONS BOARD'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Pacific Maritime Association ("PMA") has moved for summary judgment in this

extraordinary case, which seeks immediate judicial review of an interlocutory administrative

ruling made by the National Labor Relations Board ("NLRB" or "the Board").  But there is a

fatal defect to PMA's complaint:  the text of the National Labor Relations Act ("NLRA" or "the

Act") and over seventy years of precedent confirm that this Court lacks subject-matter

jurisdiction.  As a result, PMA's motion must be denied, and this case must be dismissed under

Federal Rule of Civil Procedure 12(b)(1).

# FACTS[1]

ICTSI Oregon, Inc. ("ICTSI") is the operator of Terminal 6 in the Port of Portland, which is the site of an ongoing labor dispute. On May 10, 2012, ICTSI filed an unfair labor practice charge with the Board's Region 19 office in Seattle, Washington against International Brotherhood of Electrical Workers ("IBEW") Local 48. The charge alleges, among other things, that IBEW Local 48 violated Section 8(b)(4)(D) of the Act by threatening and/or coercing ICTSI with the object of forcing or requiring ICTSI to assign the work of plugging, unplugging, and monitoring refrigerated containers at Terminal 6 to employees represented by IBEW Local 48, rather than to employees represented by International Longshore and Warehouse Union ("ILWU") Local 8 (NLRB Case No. 19-CD-080738).[2] In response, the Board's Regional Director issued a notice of hearing pursuant to Section 10(k) of the NLRA, which requires the Board to determine such work "jurisdictional disputes" upon the filing of a charge alleging a violation of Section 8(b)(4)(D).[3]

---

[1] Most of the facts stated herein are taken from the Board's decision in *IBEW, Local 48 and ICTSI Oregon, Inc.*, 358 NLRB No. 102, 2012 WL 3306478 (Aug. 13, 2012), as well as Plaintiff's Complaint. To the extent the Board has relied on additional facts, Rule 12(b)(1) permits the Court to consider material outside the complaint to help determine whether or not it has jurisdiction. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *McCarthy v. United States,* 850 F. 2d 558, 560 (9th Cir. 1988). Because the Board is filing a Motion to Dismiss for Lack of Jurisdiction concurrently with its Opposition to Plaintiff PMA's Motion for Summary Judgment, the Court must take as true the facts stated in Plaintiff's Complaint.

[2] ILWU Local 8 had filed several grievances against ICTSI seeking lost time payments because, in ILWU's view, ICTSI, as a PMA member, had violated the collective bargaining agreement between PMA and ILWU by assigning the disputed work to the IBEW. These grievances precipitated IBEW Local 48's threats to ICTSI, and those threats, in turn, served as the basis of ICTSI's unfair labor charge.

[3] Section 10(k), 29 U.S.C. § 160(k), provides:

2

In May 2012, the administrative Section 10(k) hearing was held over four days before a Board hearing officer in Portland, and in June, the Hearing Officer's Report on the 10(k) hearing, along with the record, was submitted to the Board for decision. The issues considered by the Board included: (1) whether there existed reasonable cause to believe that IBEW Local 48 violated Section 8(b)(4)(D) of the NLRA by threatening to picket or engage in other economic action at ICTSI's work site for the object of forcing or requiring the assignment of certain work to IBEW members, thus bringing the matter within the scope of Section 10(k) of the NLRA, and (2) if such dispute existed, and in the event no alternative dispute resolution binds all the parties, to whom the disputed work should be assigned (taking into account such factors as employer preference, efficiency, and area standards). PMA had filed a motion to intervene in the Section 10(k) hearing, which was denied. PMA's subsequent attempts to request special permission to appeal to the Board and to move for reconsideration were denied by the Board, noting that the record already adequately presented both the issues that PMA sought to argue and the positions of the parties on them. 358 N.L.R.B. No. 102, 2012 WL 3306478 (Aug. 13, 2012).

On August 13, 2012,[4] the Board issued a Section 10(k) Decision and Determination of Dispute, 2012 WL 3306478 (Aug. 13, 2012) ("Section 10(k) Decision"), determining that the

---

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph 4(D) of section 8(b), the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

[4] All dates herein refer to 2012.

3

ILWU-represented employees were not entitled to perform the disputed work, and instead

awarding the work to employees represented by IBEW Local 48.[5]

Meanwhile, on June 5 and August 17 respectively, ICTSI filed additional unfair labor

practice charges — alleging that ILWU Local 8 violated Section 8(b)(4)(D) by engaging in

unlawful threats and coercion for an improper purpose during the time periods both before and

after the Section 10(k) Decision issued (NLRB Case Nos. 19-CD-082461 and 19-CD-087505).[6]

Based on these charges and on ILWU's refusal to abide by the Board's August 13 Section 10(k)

Decision, the Board's Regional Director for Region 19 issued a Consolidated Complaint against

ILWU, and a hearing on that complaint was held before an administrative law judge starting on

July 24 and concluding on August 29.  That the Board had jurisdiction to issue the Section 10(k)

Decision is an essential element of the alleged Section 8(b)(4)(D) violation.  Accordingly, in its

Answer to the General Counsel's administrative complaint and in its brief to the administrative

law judge, ILWU asserts that the Port of Portland is a public entity and thus, this dispute is

outside of the jurisdiction of the Board.  *See* Anzalone Decl. Exhs. 2, 3.  This same argument is

now repeated by PMA in this lawsuit.  Yet, although agents of PMA were actually present for at

least part of the administrative hearing against ILWU, PMA has made no attempt to intervene in

---

[5] The same argument that PMA wanted to advance before the Board was argued by ILWU in the Section 10(k) proceeding, and considered and rejected by the Board.  358 N.L.R.B. No. 102 at 3 (Aug. 13, 2012).

[6] In addition, ICTSI filed charges alleging that ILWU Local 8 had violated Section 8(b)(4)(B) by using proscribed means to enmesh neutral entities into the labor dispute (NLRB Case Nos. 19-CC-082533 and 19-CC-087504).  The Port of Portland filed a similar charge against ILWU Local 8 (NLRB Case No. 19-CC-082744).

that unfair labor practice case, which is currently before an administrative law judge for decision.[7]

Instead, PMA filed the instant suit in this Court.  In view of several related proceedings already pending in the District of Oregon involving the same parties and the same dispute, the Board filed a motion to transfer venue, seeking to have this Court transfer this case to the District of Oregon (Dkt. Nos. 12, 17), which PMA has opposed (Dkt. No. 15).  As set forth below, should this Court deny the Board's motion to transfer, it should dismiss the Complaint.

## ARGUMENT

"A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists."  *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 n. 4 (D.C. Cir. 1984).  As the plaintiff in this action, PMA "bears the burden of establishing that the court has subject-matter jurisdiction."  *Adams v. United States Capitol Police Bd.*, 564 F. Supp. 2d 37, 40 (D.D.C. 2008).  For the reasons set forth below, PMA cannot carry its burden, and the Court must therefore deny Plaintiff's Motion for Summary Judgment and dismiss the case.

---

[7] *See* Anzalone Decl., Exh. 1 (excerpt of testimony of PMA in-house counsel Todd C. Amidon (Tr. 1280-88); excerpt of testimony of Richard Marzano, PMA Coast Director of Contract Administration & Arbitration (Tr. 1949-59)).  Because these PMA agents actually attended and testified during the unfair labor practice hearing, PMA was obviously, at that time, well aware of the proceeding, even assuming the truth of their assertion that it "did not receive any notice from the NLRB" regarding the unfair labor practice proceeding.  Dkt. 14-2, ¶ 23.  For the reasons explained below (pp. 14-15), in any event, whether or not PMA participates as a party in the proceeding, if it is aggrieved by an adverse final Board decision, it will be able to petition the Circuit for review under Section 10(f) of the NLRA.  29 U.S.C. § 160(f) (permitting "any person aggrieved by a final order of the Board" to petition for review).

I.    **The National Labor Relations Act Does Not Supply Jurisdiction to Directly Review Section 10(k) Work Assignment Determinations**

The jurisdiction of this Court is limited, extending "only over such matters as are committed to it by statute." *Belhas v. Ya'alon*, 515 F.3d 1279, 1283 (D.C. Cir. 2008). Sections 10(e) and (f) of the National Labor Relations Act ("the Act") provide the exclusive means for securing judicial review of Board rulings in its administrative cases. Pursuant to those provisions, the Board's rulings are subject to review only upon the issuance of a final Board order at the conclusion of an unfair labor practice proceeding, and only in an appropriate United States Court of Appeals. *See* 29 U.S.C. § 160(e), (f). The statute simply leaves no room for "over-the-shoulder supervision . . . [by] District Courts who, for that matter, have a very very minor role to play in this statutory structure." *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966) (noting that the Act grants district courts jurisdiction only to consider Board requests for either temporary injunctive relief (29 U.S.C. §§ 160(j), (l)) or enforcement of administrative subpoenas (29 U.S.C. § 161)).

The Supreme Court's decision in *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938), underscores the preclusive effect that Section 10(e) and (f) have on efforts to enmesh district courts in disputes over pending unfair labor practice cases. In *Myers*, the Court unanimously rejected the argument that district courts have the power to consider jurisdictional challenges to pending unfair labor practice matters. Relying on Congress's clear desire to channel judicial review of unfair labor practice cases directly to the courts of appeals after the Board issues a final order in an unfair labor practice proceeding, the Court held that "[t]he District Court is without jurisdiction . . . because the power 'to prevent any person from

engaging in any unfair labor practice affecting commerce' has been vested by Congress in the Board and the Circuit Court of Appeals." *Id.* at 48 (quoting 29 U.S.C. § 160(a)).

"Since *Myers* the courts have, without exception, ruled that . . . interlocutory rulings of the Board in the course of such [unfair labor practice] proceedings may not be considered by federal District Courts." *United Aircraft Corp. v. McCulloch*, 365 F.2d 960, 961 (D.C. Cir. 1966). Both this Court and the D.C. Circuit are counted among them. For example, in *United Aircraft*, this Court dismissed for lack of jurisdiction a suit brought to "restrain the members of the National Labor Relations Board in their conduct of an unfair labor practice case." *Id.* at 960. More specifically, the plaintiff had "sought the withdrawal of a[n interlocutory] Board order," *id.* at 961, while the unfair labor practice case was "still pending before the Board . . . ." *Id.* at 960. Relying on *Myers*, the D.C. Circuit straightforwardly affirmed: "It seems to us that a mere statement of the relief sought is sufficient to demonstrate want of jurisdiction in the District Court to proceed." *Id.* at 961.

Likewise, courts outside this circuit have repeatedly rejected similar pleas to allow district courts to supervise or otherwise review rulings made during the course of unfair labor practice proceedings. [8] *See, e.g., J.P. Stevens Employees Educ. Comm. v. NLRB*, 582 F.2d 326, 328-29 (4th Cir. 1978) (affirming district court's conclusion that it lacked jurisdiction to review NLRB's refusal to allow the plaintiff to intervene in a pending unfair labor practice case); *Bokat v. Tidewater Equip. Co.*, 363 F.2d 363 F.2d 667, 671 (5th Cir. 1966) ("[A]ny effort by the Federal District Courts to review or supervise unfair labor practice proceedings prior to the issuance of the Board's final order 'is at war with the long-settled rule of judicial administration

---

[8] As we show below, in the context of this ongoing unfair labor practice proceeding, PMA errs in relying upon the very narrow exception established in *Leedom v. Kyne*, 358 U.S. 184 (1958), for district court review of an NLRB representation proceeding in extraordinary circumstances.

that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted'") (quoting *Myers*, 303 U.S. at 50-51).

The Board's special authority under Section 10(k) to award disputed work arises only after an unfair labor practice charge alleging a violation of Section 8(b)(4)(D) has been filed.  In other words, the Section 10(k) proceeding and the Section 8(b)(4)(D) case "are interlocked." *NLRB v. Plasterers' Local Union No. 79*, 404 U.S. 116, 123 (1971).  As the Supreme Court has explained,

> Section 8(b)(4)(D) makes it an unfair labor practice for a labor organization to strike or threaten or coerce an employer or other person in order to force or require an employer to assign particular work to one group of employees rather than to another . . . .  When a § 8(b)(4)(D) charge is filed and there is reasonable cause to believe that an unfair labor practice has been committed, issuance of the complaint is withheld until the provisions of § 10(k) have been satisfied.  That section directs the Board to "hear and determine" the dispute out of which the alleged unfair labor practice arose; the Board is required to decide which union or group of employees is entitled to the disputed work in accordance with acceptable, Board-developed standards, unless the parties to the underlying dispute settle the case or agree upon a method for settlement.  Whether the § 8(b)(4)(D) charge will be sustained or dismissed is thus dependent on the outcome of the § 10(k) proceeding.

*Id.* at 123-24.

Accordingly, Section 10(k) decisions are "interlocutory in nature."  The Developing Labor Law 2082 (John E. Higgins, Jr., ed., 6th ed. 2012); *accord Henderson v. ILWU Local 50*, 457 F.2d 572, 577 (9th Cir. 1972) ("[T]he section 10(k) award is an interlocutory order reviewable only in the course of review of any subsequent final [unfair labor practice] order under section 8(b)(4)(D)."); *Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local No. 395 v. Lake County, Indiana Council of the United Bhd. of Carpenters*, 347 F. Supp. 1377 (N.D. Ind. 1972) (noting that a Section 10(k) award "is only an interlocutory order").  "A § 10(k) proceeding is a comparative proceeding aimed at determining which union is entitled to perform

8

certain tasks." *Plasterers' Local Union No. 79*, 404 U.S. at 135. "But the § 10(k) decision standing alone, binds no one." *Id.* at 126. Rather, in NLRB proceedings, "the impact of the § 10(k) decision is felt in the [subsequent] § 8(b)(4)(D) hearing." *Id.*

Consistent with *Myers*, *United Aircraft*, and the text of the statute, courts have repeatedly held that, under the NLRA, interlocutory Section 10(k) determinations made by the Board during the course of Section 8(b)(4)(D) unfair labor practice proceedings are not judicially reviewable. *See, e.g., Foley-Wismer & Becker v. NLRB*, 682 F.2d 770, 773 (9th Cir. 1982) (limited en banc) ("[T]o allow appeals to be taken from § 10(k) awards would involve the courts in a direct interference with the normal operation of the § 8(b)(4)(D) machinery."); *id.* at 776 (dissenting opinion) ("[I]t is well established that an employer has no avenue of review from an adverse section 10(k) award."); *NLRB v. ILWU*, 378 F.2d 33, 35 (9th Cir. 1967) ("[T]here is no independent review of a Section 10(k) work assignment dispute . . . ."); *NLRB v. Local 991, Int'l Longshoremen's Ass'n*, 332 F.2d 66, 71 (5th Cir. 1964) (same).

Indeed, no one knows this better than PMA. In *NLRB v. ILWU Local No. 50*, 504 F.2d 1209, 1212 n.1 (9th Cir. 1974), "PMA urge[d the Ninth Circuit] to hold that § 10(k) decisions are directly reviewable." The Court of Appeals flatly refused to do so. *Id.* ("Twice before we have rejected this suggestion on the ground that no final order results from a § 10(k) hearing. . . . The decisions of this court in *Waterway Terminals Co. v. NLRB*, 9 Cir., 1972, 467 F.2d 1011, and of the Supreme Court in *NLRB v. Plasterers' Union*, *supra,* only serve to reinforce our holding that § 10(k) decisions are not directly reviewable."). Moreover, in *Henderson v. ILWU Local 50*, 457 F.2d 572, 577 (9th Cir. 1972), PMA petitioned the Ninth Circuit for review of the Board's refusal to stay a Section 10(k) determination. Relying on the "interlocutory" nature of a Section 10(k) award, the court dismissed PMA's petition for lack of jurisdiction. *Id.*

9

Accordingly, it could hardly be more clear that the instant challenge to the Board's Section 10(k) Decision is contrary to the statute and decades of precedent. And, as shown below, the prohibition of district court review at this stage makes eminent sense. This is because the propriety of the Section 10(k) Decision is ultimately reviewable as part of the unfair labor practice proceeding that is currently being conducted to determine whether ILWU violated Section 8(b)(4)(D) by engaging in conduct to force the reassignment of work in conflict with the Board's Section 10(k) Decision of that work to IBEW Local 8.

## II. PMA's Reliance on the "Exceptional Circumstances" Doctrine of *Leedom v. Kyne* Fails to Supply Subject-Matter Jurisdiction

The rule of *Myers*, which recognizes the primacy and exclusivity of the NLRA's judicial review procedures, is subject to very limited and rarely applied exceptions. PMA relies heavily on the exception recognized by the Supreme Court in *Leedom v. Kyne*, 358 U.S. 184 (1958). Pursuant to *Leedom*, district courts may exercise jurisdiction under 28 U.S.C. § 1337 "to strike down an order of the Board," *id.* at 188, only "'[i]f the absence of jurisdiction of the federal courts [would] mean[] a sacrifice or obliteration of a right which Congress has created,'" *id.* at 190 (quoting *Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)). Thus, in order to justify the exercise of *Leedom* jurisdiction, a plaintiff must satisfy a rigorous two-part conjunctive requirement: the "plaintiff must show, first, that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory,' and, second, that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights.'" *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (alteration

in original) (citation omitted).  *Accord  AMERCO v. NLRB*, 458 F.3d 883, 888-90 (9th Cir. 2006).

Time and again, the D.C. Circuit has emphasized how difficult it is for plaintiffs to establish jurisdiction under *Leedom*.  For example, in *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 n.2 (D.C. Cir. 1968), the D.C. Circuit explained that *Leedom* jurisdiction arises only in "exceptional circumstances," and in *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1312 (D.C. Cir. 1984), the court of appeals noted that precedent "made it unmistakably clear that the *Kyne* exception is extraordinarily narrow[]."  In yet another case, the D.C. Circuit praised the district court for "exhibit[ing] its awareness of the extreme circumspection with which the Supreme Court and this court have approached any departure from the customary channels of judicial examination of Board action."  *Local 130, Int'l Union of Elec., Radio & Mach. Workers v. McCulloch*, 345 F.2d 90, 96 (D.C. Cir. 1965).  Indeed, "[t]he federal courts have consistently recognized the limits imposed by the *Kyne* decision."  *Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) (en banc); *see also id.* at 503 (dissenting opinion) ("This circuit, like the other lower courts, has been frugal in recognizing the *Kyne* exception.").  Thus, when *Leedom* is invoked, courts must be "extremely chary of involving themselves."  *Int'l Bhd. of Teamsters v. Bhd. of Ry., Airline & S.S. Clerks*, 402 F.2d 196, 205 (D.C. Cir. 1968).

In this case, PMA has not and cannot show that *Leedom* supplies the Court with jurisdiction to hear this case.  To so decide, this Court need look no further than *Leedom*'s requirement that the denial of review of the instant complaint must deprive a party of all means to secure judicial review of its claim of statutory rights.

11

A.  <u>PMA Cannot Show It Has No Alternative Avenue of Judicial Review</u>

PMA already has an alternative, statutorily-provided avenue to secure judicial review of the Board's Section 10(k) Decision.  A leading treatise on NLRB procedure explains:

> The Board's decision [in a Section 10(k) proceeding] . . . is subject to court review.  In cases where a Section 10(k) proceeding has been held and an unfair labor practice proceeding follows, the record in the Section 10(k) proceeding and the resulting determination of the Board become part of the unfair labor practice record and thus subject to examination by the court upon review [of the final Board order in the unfair labor practice proceeding].

How to Take a Case Before the NLRB at 641 (Brent Garren *et al.* eds., 7th ed. 2000) (footnote omitted) (citing 29 C.F.R. § 102.92).  As explained above, and as PMA acknowledges, there is now pending before the NLRB a Section 8(b)(4)(D) unfair labor practice proceeding that depends, in significant part, on the Board's underlying Section 10(k) Decision that PMA seeks to challenge here.  Section 10(f) of the NLRA provides that upon the issuance of "a final order of the Board granting or denying in whole or in part the relief sought" in that unfair labor practice case, "any person aggrieved" by that order may obtain review in an appropriate court of appeals. 29 U.S.C. § 160(f).  And, as shown, the Board's Section 10(k) decision will then become "subject to examination by the court."  How to Take a Case Before the NLRB at 641.  *See*, *e.g.*, *NLRB v. ILWU*, 378 F.2d 33, 34 (9th Cir. 1967).

PMA does not show, as it must, how following this statutorily prescribed procedure will deny it "'a meaningful and adequate means of vindicating its statutory rights.'"  *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1263 (quoting *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).  Certainly, it is not for lack of knowledge of this process.  In fact, PMA has previously followed this very procedure to obtain judicial review of an adverse Section 10(k) determination.  In *ILWU Local 50*, PMA successfully brought a petition

for review to the Ninth Circuit of a final Board order in a Section 8(b)(4)(D) unfair labor practice case that was premised on a Section 10(k) determination.  There, the Court stated: "[b]ecause the Board's § 8(b)(4)(D)[] complaint is predicated upon its resolution of the work assignment dispute in the § 10(k) hearing, the crucial question . . . is whether the Board's § 10(k) award is sustainable." 504 F.2d at 1212.  The Ninth Circuit ultimately agreed with PMA that the Board's Section 10(k) award in that case could not stand.  *Id.* at 1222.

Nor can PMA show that Section 10(f) review of the Section 8(b)(4)(D) unfair labor practice case will not be available merely because PMA is not now a party to that administrative proceeding.  Initially, PMA has not explained why, to date, it has not attempted to intervene in the Section 8(b)(4)(D) case.  *See* Sec. 102.29 of Board's Rules and Regulations, 29 C.F.R. § 102.29 (permitting motions to intervene to be filed with a Regional Director or administrative law judge).  It is true that the Board denied PMA's request for intervention in the underlying Section 10(k) case.[9]  But it does not follow that the Board will automatically make the same decision should PMA seek to intervene in the pending unfair labor practice proceeding.  Importantly, the Board can revisit and reconsider in the Section 8(b)(4)(D) proceeding issues it decided in the underlying Section 10(k) decision.  "The findings and conclusions in a § 10(k) proceeding are not res judicata on the unfair labor practice issue in the later § 8(b)(4)(D) determination." *Plasterers' Local Union No. 79*, 404 U.S. at 365 n.10; *see also Warehouse*

---

[9] More specifically, the hearing officer who conducted the Section 10(k) hearing denied PMA's motion to intervene "finding that PMA's interests would be adequately represented by the existing parties to the hearing." *Int'l Bhd. of Elec. Workers, Local 48*, 358 N.L.R.B. No. 102, at 2 n. 4 (Aug. 13, 2012).  PMA then filed with the Board a request for special permission to appeal that ruling.  The Board denied PMA's request for a discretionary appeal because "the record and the briefs . . . adequately present the issues before the Board and the positions of the parties." *Id.* Moreover, the Board noted that PMA sought to advance the "same claims as ILWU." *Id.*  After the Board issued its Section 10(k) determination, PMA filed a motion for reconsideration, which the Board denied.

*Union Local 6, ILWU* (*Golden Grain Macaroni, Co.*), 289 NLRB 1, 2 (1988).  Even if the Board were to deny a new request by PMA to intervene in the pending Section 8(b)(4)(D) case, that denial would be subject to judicial review at the conclusion of the unfair labor practice case.  *See J.P. Stevens Employees Educ. Comm. v. NLRB*, 582 F.2d at 329.[10]

In any event, assuming that it is genuinely aggrieved, PMA will have adequate alternative recourse to the statutorily-provided Section 10(f) judicial review, even if PMA continues to be an observer rather than a participant in the ongoing unfair labor practice case.  Section 10(f) permits "any person"—rather than "any party"—who is "aggrieved" by the Board's final order to seek judicial review in an appropriate circuit court.  29 U.S.C. § 160(f).  To be "aggrieved" within the meaning of Section 10(f), a litigant must demonstrate that the Board's order has an "'adverse effect in fact.'"  *Oil, Chem. & Atomic Workers v. NLRB*, 694 F.2d 1289, 1294 (D.C. Cir. 1982) (quoting *Retail Clerks Union 1059 v. NLRB*, 348 F.2d 369, 370 (D.C. Cir. 1965)); *see also Brentwood at Hobart v. NLRB,* 675 F.3d 999, 1005 (6th Cir. 2012) (parent company established that Sixth Circuit was appropriate venue for petition for review of Board order, where parent company was directly involved in operations of respondent nursing home, and was thus "aggrieved"); *Hamilton v. NLRB*, 160 F.2d 465 (6th Cir. 1947) (deciding nonparty discriminatee's Section 10(f) petition for review of Board order partially dismissing unfair labor practice complaint against respondent employer).

If PMA has suffered injury from the Board's Section 10(k) Decision as it claims (PMA Mem., Dkt. 14-1, at 14), then it will be able to get Section 10(f) review in the Court of Appeals

---

[10] For these reasons, there is no merit to PMA's legal assertion (Complaint, Dkt. 1, ¶ 33; Statement of Material Facts, Dkt. 14-2, ¶ 22), that PMA has "exhaust[ed] all administrative review procedures available to PMA . . . ."

should the Board affirm its Section 10(k) decision in the unfair labor practice proceeding.  On

the other hand, if, in a subsequent petition for review, PMA cannot establish that it has been

aggrieved "under section 10(f)'s broad standard of aggrievement," *Oil, Chem. & Atomic

Workers*, 694 F.2d at 1295, then it is highly doubtful that PMA even has standing to bring the

instant action, which similarly requires a plaintiff to demonstrate an "injury in fact."  *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

   B.  PMA Cannot Establish *Leedom's* Requirement of a Clear Violation of a Statutory
       Provision

       In addition, PMA has not shown that this case satisfies *Leedom*'s additional

requirement—that is, a showing that the Board's action constitutes a clear violation of the

statute.  It is not enough for PMA to show that the Board was possibly wrong or even likely

wrong.[11]  *Physicians Nat'l House Staff Ass'n*, 642 F.2d at 496 n. 4. ("[T]he mere possibility that

the decision being reviewed is erroneous is not sufficient to support jurisdiction.").  "The courts

have required . . . that the Board must have disregarded a specific and unambiguous directive

before its actions will fall within the *Leedom v. Kyne* exception."  *United Food & Commercial

Workers, Local 400 v. NLRB*, 694 F.2d 276, 278 (D.C. Cir. 1982); *accord Libbey-Owens-Ford

Glass Co.*, 403 F.2d at 916 ("[T]he showing that the Board has violated the Act . . . must be

strong and clear."); *Lawrence Typographical Union v. McCulloch*, 394 F.2d 704, 706 (D.C. Cir.

1966) (there must be "a violation by the Board of a clear, specific, and mandatory provision of

the Act").  In other words, PMA "must be able to identify a specific provision of the Act which

although it is 'clear and mandatory' has nevertheless been violated by the Board."  *Physicians

---

[11] Of course, the Board does not concede that it was wrong at all.  But the burden is not on the
Board to show that its decision was right.  Rather, PMA bears the heavy burden to establish the
clear invalidity of the Board's action.

*Nat'l House Staff Ass'n*, 642 F.2d at 496 (citation omitted); *accord Univ. of Vt. v. Vermont*, 748 F. Supp. 235, 239 (D. Vt. 1990) ("*Kyne* review was intended as an extraordinary procedure reserved only for flagrant violations of the Act.").

　　PMA also cannot show that the Board has violated a "clear and mandatory" provision of the Act.  PMA argues that a jurisdictional dispute under Section 8(b)(4)(D) must be between two separate groups of "employees," as defined by Section 2(3) of the Act.  The problem for PMA is that the D.C. Circuit, sitting *en banc*, has previously rejected a challenger's "attempt to find in section 2(3) of the Act the clear statutory mandate required by *Leedom v. Kyne*. . . .  That section does not define the term employee nor does any other section of the Act."  *Physicians Nat'l House Staff Ass'n*, 642 F.2d at 496; *cf. E. Greyhound Lines v. Fusco*, 323 F.2d 477 (6th Cir. 1963) (rejecting *Leedom* as a jurisdictional basis to review argument that "dispatchers were not employees with the meaning of Section 2(3)").[12]

　　In addition, the Board has historically adjudicated jurisdictional disputes at the Port of Portland where, as PMA emphasizes here, the Port employed one group of employees.  *See, e.g.*, *ILWU, Local 8* (*Port of Portland*), 233 N.L.R.B. 459 (1977) (Section 10(k) decision).  Although this does not demonstrate that either the Board is right or PMA is wrong, it does show that the

---

[12] Indeed, in *Physicians National House Staff Association*, the D.C. Circuit affirmed this Court's dismissal of a suit complaining that the Board had patently misapplied Section 2(3) of the Act when it concluded that hospital interns, residents, and clinical fellows are not "employees" under the NLRA.  The Court reasoned that it is for the Board to delineate that term as used in various provisions of the NLRA.  "The task of decision on the facts of each case is assigned to the National Labor Relations Board and in making that decision the Board exercises its informed discretion. . . . Everyday experience in the administration of the statute gives it familiarity with the circumstances and backgrounds of employment relations in various industries, with the abilities and needs of the workers for self-organization and collections action, and with the adaptability of collective bargaining for the peaceful settlement of their disputes with their employers. . . ."  642 F.2d at 497 (quoting *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 130 (1944)).

16

Board has previously adhered to the view that such disputes are properly adjudicable in Section 10(k) proceedings, and it undercuts any argument that the Board's action in this case is "anything like the palpable disregard of the command of the statute" that is needed to sustain jurisdiction under *Leedom*. *Local 130, Int'l Union of Elec., Radio & Mach. Workers*, 345 F.2d at 96.

For these reasons, PMA cannot meet the daunting task under *Leedom* of showing a clear violation of the Act. "It is at least less than clear that the [plaintiff's] argument will ultimately be accepted by the Supreme Court. A necessary condition of exemption from the exhaustion requirement is therefore lacking." *Squillacote ex rel. NLRB v. Int'l Bhd. of Teamsters, Local 344*, 561 F.2d 31, 40 (7th Cir. 1977).

## III.    The Highly Charged International Circumstances that Existed in *McCulloch v. Sociedad Nacional de Marineros de Honduras* Are Simply Not Present in this Purely Domestic Labor Dispute

In addition to relying on the extraordinary circumstances doctrine of *Leedom*, PMA also attempts to establish jurisdiction under an even narrower—and equally inapplicable—exception to the rule of *Myers*. Specifically, PMA relies on the Supreme Court's decision in *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10 (1963) [hereinafter *Marineros*]. There, the Supreme Court held that a district court had jurisdiction to enjoin an NLRB-ordered representation election involving *foreign* seamen, who were already represented by a *foreign* union, on shipping vessels owned by a *Honduran* corporation.

District court jurisdiction was sustained in *Marineros* because resolution of the underlying labor controversy by the NLRB might have fomented "international discord." *Id.* at 21. The reach of the *Marineros* exception is therefore limited to those extremely rare occasions where "the Board's assertion of jurisdiction would cause disturbances and embarrassment in international relations." *Goethe House N.Y., German Cultural Ctr. v. NLRB*, 869 F.2d 75, 77 (2d

Cir. 1989).  PMA misreads *Marineros* as conferring district court jurisdiction whenever a Board ruling has an impact on "foreign commerce."  (PMA Mem., Dkt. 14-1, at 28.)  But, as the D.C. Circuit has explained, *Marineros* is actually much narrower; it applies only when a Board ruling threatens to harm "*foreign relations*."  *Hartz Mountain Corp.* 727 F.2d at 1311 (emphasis in original); *accord United Food & Commercial Workers, Local 400*, 694 F.2d at 278.  Here, the key players in this labor dispute—ICTSI, the Port of Portland, the two labor unions, and even PMA—are all domestic entities with interests that occupy a substantively different position than those of the Republic of Honduras in *Marineros*.  There is no plausible claim that the Board's Section 10(k) Decision might damage international relations.  Accordingly, PMA's attempt to establish district court jurisdiction under *Marineros* must fail.

## CONCLUSION

"We emphasize that neither the National Labor Relations Act itself, nor any authoritative legislative history, nor *Leedom v. Kyne, supra*, nor any other Supreme Court decision, either commands or authorizes the delay inherent in District Court review of interlocutory orders of the Board or its agents."  *Blue Cross & Blue Shield of Mich. v. NLRB*, 609 F.2d 240, 244 (6th Cir. 1979).  These apt words apply with equal force here.  PMA has failed to establish that this Court has subject-matter jurisdiction over its claim.  Therefore, the Court must deny PMA's Motion for Summary Judgment and dismiss this case under Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted,

s/ Eric G. Moskowitz
ERIC G. MOSKOWITZ
Assistant General Counsel
 for Special Litigation
National Labor Relations Board
1099 14th Street, N.W.
Washington, D.C. 20570

Phone:  (202) 273-2930
Fax: (202) 273-1799
E-mail: Eric.Moskowitz@nlrb.gov
D.C. Bar No. 184614

NANCY E. KESSLER PLATT
Supervisory Attorney
Special Litigation Branch
Phone (202) 273-2937
E-mail: Nancy.Platt@nlrb.gov
D.C. Bar No. 425995

DENISE F. MEINERS
Attorney
Special Litigation Branch
Phone: (202) 273-2935
E-mail: Denise.Meiners@nlrb.gov
D.C. Bar No. 433041

KEVIN P. FLANAGAN
Attorney
Special Litigation Branch
Phone: (202) 273-2938
E-mail: Kevin.Flanagan@nlrb.gov
Dated:  November 9, 2012       Maryland Bar Member